**HOWELL CRUDE OIL COMPANY,**
Appellant,

v.

**DONNA REFINERY PARTNERS,**
**LTD. et al., Appellees.**

No. 14–94–00498–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 6, 1996.

Rehearing Overruled Aug. 8, 1996.

**104**

Eugene B. Wilshire, Jr., Patrick J. Dyer, Jacalyn D. Scott, Elton L. Brownshadel, Houston, for appellants.

Patricia Hair, C. Henry Kollenberg, Houston, for appellees.

Before YATES, FOWLER and JOE L. DRAUGHN,* JJ.

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

Howell Crude Oil Company ("Howell") appeals from a jury verdict in favor of Donna Refinery Partners Ltd. ("Donna") arising out of the sale of crude oil.[1] Donna alleged violations of the DTPA, negligent misrepresentation, fraud, and breach of contract based on alleged false statements made by Howell representatives during contract negotiations and Howell's failure to deliver crude oil as promised. The jury found in favor of Donna on all causes of action and awarded Donna actual damages for lost profits and loss of refinery enterprise on each theory of recovery as well as additional damages, exemplary damages, and attorney's fees. The trial court disregarded the actual damages for loss of refinery enterprise and the actual and exemplary damage findings based on negligent misrepresentation and fraud. The trial court entered judgment for Donna under the DTPA and awarded damages totaling nearly $675,000, plus post-judgment interest. Howell raises five points of error primarily attacking the jury's actual damage findings. Donna raises three cross-points contending the trial court erred in disregarding the jury's tort damage findings and in assessing 1/4 of the court costs against Donna. We affirm the judgment awarding Donna damages on its DTPA claim but modify the judgment to allow Donna to recover all of its court costs.

## Facts

In April 1988, Donna commenced operations of a small oil refinery located near McAllen, Texas. The refinery was designed to refine the locally produced, light sweet condensate. In July 1988, Donna executed a "purchase and sale" agreement with Metallgesellschaft Corp. ("MG") for the purchase of crude oil as feedstock. Pursuant to this agreement, Donna located suppliers and negotiated contract terms. At Donna's instruction, MG then paid for the feedstocks "up front" and charged Donna its cost, plus a mark-up of $.21 a barrel. Donna was not required to repay MG until it sold the refined products. However, as security in the event of a default by Donna, MG took title to the feedstocks and stored them in tanks leased from Donna. This arrangement allowed MG to "foreclose" on the feedstocks without resorting to the courts. The parties dispute whether MG and Donna had an agency relationship or a "buyer-seller" relationship.

In any event, MG, on behalf of Donna, entered into supply agreements with Koch Oil Company ("Koch") and Coastal States Trading Company ("Coastal"). The agreement with Koch was what was known in the industry as a "30–day evergreen" contract, which automatically renewed unless one party cancelled or demanded a change in terms upon thirty-days notice. Donna initially had

---

* Sitting by assignment.

1. This suit was brought by Donna "for the use and benefit" of the individuals and entities who were former partners of Donna. Although they sold their partnership interests to a third-party, they retained their interest in the partnership's cause of action against Howell.

difficulty obtaining a crude supply from Koch and when Koch did supply the crude, the quality of the oil was deficient. These deficiencies were eventually corrected.

In late 1988, Koch raised its price several times. During this time, Donna also submitted a bid to provide JP–4, a military specification jet fuel, to the United States government. Because of Koch's price increases, Donna's refinery manager, Robert Wilt, sought alternative sources of crude for the government contract. Through broker, Charles Linton, Wilt learned Howell was interested in selling crude to Donna. In October 1988, Linton introduced Wilt to Howell's Vice–President, James Stewart. At a meeting held in Stewart's office, Wilt told Stewart about Donna's problems with Koch and that Donna was interested in a deal. After this meeting, Donna and MG began negotiations with Howell to replace the Koch contract.

At the heart of this lawsuit is a meeting at Houston's Restaurant in Houston, Texas. The meeting took place in October 1988 and was attended by Wilt, Linton, and Stewart. The meeting was also attended by Howell's President, James Buford, and MG's Vice–President, Mike Schwartz. The parties' recollections of the conversations at this meeting conflict. According to Wilt and Schwartz, the Howell representatives stated they were going to obtain the crude oil from Shell Oil Company's McAllen Ranch Field. The Shell field produced a quality of crude that made it less costly to refine JP–4. Wilt told Stewart he had tried unsuccessfully in the past to purchase barrels from the Shell field. Wilt also warned Stewart about Donna's problems with Koch and the financial consequences to Donna of cancelling the Koch contract. However, Stewart assured Wilt that he (Stewart) and the Shell representative had a close relationship and it was a "done deal." Because he was afraid Koch might cancel its contract with Donna, Wilt told the Howell representatives to keep the transaction confidential. Wilt, Schwartz, and Linton left the meeting at Houston's with the understanding an agreement had been reached. Stewart and Buford denied there was any promise to supply crude from the Shell McAllen Ranch Field or any other specific field. In fact, they conceded Howell never at any time obtained a commitment from Shell Oil Company to supply crude from the Shell McAllen Ranch Field. Stewart and Buford also denied any discussion about the Koch contract.

In November 1988, MG's contract administrator, Valerie Lang, telephoned Stewart requesting written confirmation of the deal before cancelling the Koch contract. According to Lang, Stewart assured her of a deal. Stewart denied this. Stewart testified the parties had reached an agreement only as to price but not as to quantity, which was contingent on Howell securing a commitment from suppliers, including Shell. On November 30, 1988, Lang and Stewart exchanged telexes detailing the terms of a contract. Donna contends these telexes evidence the contract, while Howell contends they were merely proposals and counter-proposals because there was no agreement on a letter of credit.

The next day, MG cancelled the contract with Koch, effective January 1, 1989, as required by the thirty-day notice provision of the Koch contract. Shortly after cancellation, Schwartz received a telephone call from Koch's oil trader advising him that Koch had just renewed its contract with Shell. Alarmed by this, Schwartz tried unsuccessfully to contact Stewart and Buford at Howell. In mid-December, Schwartz finally saw Buford at a social gathering. According to Schwartz, Buford not only assured him that Howell had obtained the crude, but never questioned the existence of the contract. Buford testified Schwartz merely asked about the status of negotiations and he never told Schwartz there was a contract.

Shortly thereafter, either Stewart or Buford notified Schwartz that Howell did not obtain the Shell contract and would not be delivering the crude. At a meeting attended by Schwartz, Lang, Wilt, Stewart, and Buford at MG's offices in late December or early January, Howell was advised that Donna's contract with Koch had been cancelled because of the Howell contract. Howell denied the existence of any such contract, but offered to help supply MG and Donna with needed feedstocks. MG subsequently refused Howell's offer.

Because of the collapse of the Howell deal in late December, Donna was unable to obtain feedstocks from any other supplier for January delivery and thus, was forced to seek reinstatement of the Koch contract. Koch agreed to reinstate the contract but at a significantly higher price. By January 1989, Donna was awarded the government contract to make JP–4, with the first delivery due on April 1, 1989. However, because of Koch's price increase and renewed problems with the quality of Koch's crude supply, Donna incurred increased operational costs. As a result of these increased operational costs, Donna's cash-flow dwindled and Donna was forced to delay the first delivery of JP–4, which further reduced revenues. Eventually, Donna defaulted under the purchase and sale agreement with MG. In July 1989, the individual partners transferred their partnership interest in Donna to a third-party, but retained their interest in any claims the partnership had against Howell. By November 1989, the refinery had abandoned the JP–4 contract and ceased operations.

## Suit and Trial

On August 15, 1989, Donna filed this suit against Howell and its parent company, Howell Corporation, alleging violations of the DTPA, fraud, negligent misrepresentation, and breach of contract. Charles Linton filed a Petition In Intervention for his unpaid brokerage commissions. In December 1993, the case was tried to a jury. At the close of the plaintiff's evidence, the trial court granted Howell Corporation's motion for directed verdict and dismissed Howell Corporation from the suit.

Following a week-long trial, the jury found in favor of Donna on all causes of action. For each cause of action, the jury awarded Donna actual damages of $174,110 for loss of net profits and $1,000,000 for loss of the value of Donna's refinery enterprise.[2] The jury also awarded Donna $250,000 in DTPA additional damages and based on its findings of tort liability, $250,000 in exemplary damages. Finally, the jury awarded Donna

2. A single actual and exemplary damage question was submitted for Donna's fraud and negligent

$469,956.30 in attorney's fees for trial and $640,849.50 in appellate attorney's fees.

## Judgment

Following the jury's verdict, Donna moved for judgment on the verdict. Howell filed an Amended Motion for Judgment Notwithstanding the Verdict or Alternatively, To Disregard Certain Findings of the Jury. The court granted Howell's motion in part, disregarding the jury's finding of damages for loss of the refinery enterprise based on the DTPA and contract claims and all damages based on the fraud and negligent misrepresentation claims. The court also reduced the award of appellate attorney's fees. In its final judgment of January 21, 1994, the trial court awarded Donna damages under the DTPA as follows: (1) $174,110 in actual damages; (2) $250,000 in additional damages; (3) $167,281.61 in trial attorney's fees, and $202,765.60 in attorney's fees on successful appeal to the Court of Appeals; (4) $82,804.00 in prejudgment interest; and (5) post-judgment interest. The court also gave approval to an agreement between Donna and Linton whereby Linton was to receive $15,100, plus post judgment interest, from any proceeds recovered from Howell. Finally, the court divided the costs of suit, 3/4 to Howell and 1/4 to Donna. After its Motion for New Trial was overruled by operation of law, Howell perfected this appeal.

## Analysis

 In point of error one, Howell contends the evidence is legally and factually insufficient to support the jury's finding of net lost profits. In the damage question submitted with each cause of action, the jury was asked to award Donna money for loss of net profits. The jury was instructed "that 'net profits' means the money received from the sale of goods after deducting their costs and expenses." As we observed, the jury awarded Donna $174,110 in net lost profits under each theory of liability submitted.

misrepresentation claims.

The standard of review for the sufficiency of the evidence is well-established. The sufficiency of the evidence must be examined in view of the questions and instructions submitted in the charge. *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985). When both legal and factual sufficiency points are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the jury's findings. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). That review requires us to consider only the evidence and inferences that tend to support the jury's findings and to disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex. 1988). When there is more than a scintilla of evidence, we may not overturn the jury's findings on legal sufficiency grounds. *Id.*

If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in support of, and contrary to, the challenged findings. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The jury's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we may not substitute our judgment for that of the factfinder simply because we may disagree with the factfinder's conclusions. *Herbert v. Herbert,* 754 S.W.2d 141, 142 (Tex. 1988); *ForScan v. Dresser Indus.,* 789 S.W.2d 389, 394 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, (Tex.1994) (per curiam); *Texas Instruments Inc. v. Teletron Energy Management Inc.,* 877 S.W.2d 276, 279 (Tex.1994). However, the injured party must do more than show that they suffered some lost profits. *Id.* The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Id.*; *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992). At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.* Recovery of lost profits must be predicated on one complete calculation. *Id.*

In this case, the only evidence in support of Donna's lost profits comes from its expert, Thomas Ryan. In determining the net present value of the refinery, Ryan testified the refinery's net income if Howell had performed would have been $300,000 for the period of the Howell contract. According to Ryan, Donna would have made an average profit per barrel of $.43 during the contract period if Howell had performed. In addition, to this testimony, Donna presented plaintiff's exhibit 28A, which was Ryan's calculation of the refinery's total net income for the six-month period of the Howell contract. Exhibit 28A presents two scenarios: "Case A" and "Case B." In Case A, Ryan assumed Donna produced only naphtha and diesel for the first three months and then JP–4, diesel, and straight run gasoline for the next three months. In Case B, Ryan assumed Donna produced only naphtha and diesel. In both scenarios, Ryan assumed a 100% yield for these products. Ryan also assumed Howell performed its contract with Donna and that Donna refined 3800 barrels per day (1700 barrels from Howell at $1.10 per barrel and 2100 barrels from other suppliers at $1.15 per barrel). Ryan estimated the per barrel revenues from the products sold by Donna based on a pricing service recognized in the industry. Ryan then estimated per barrel feedstock costs and operating expenses prior to the Howell transaction based on information provided by Wilt and a comparison of similar refineries. In Case A, Ryan concluded that if Howell had supplied the crude as promised, Donna's total net income during the contract period would have been $75,544. Similarly, in Case B, Ryan concluded that if Howell had supplied the crude as promised,

Donna's total net income would have been $356,706.

While Ryan's opinion is predicated on one complete calculation, Howell details various deficiencies in the assumptions and conclusions that form the basis of that opinion and argues Ryan's opinion is not based on "objective facts, figures, or data." *See Holt Atherton,* 835 S.W.2d at 84. Some, but not all, of these deficiencies were brought to the jury's attention. While there are flaws in Ryan's calculation, it was not required to be exact nor was Ryan required to produce documents supporting his opinion and estimates. *See id.* (holding that the failure to produce documents supporting an opinion or estimate of lost profits goes only to weight of the evidence). As we observed, the jury awarded $174,110. While it is not clear how the jury arrived at this figure, a trier of fact has the discretion to award damages within the range of the evidence presented at trial.[3] *City of Houston v. Harris County Outdoor Advertising, Ass'n,* 879 S.W.2d 322, 334 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *cert denied,* —— U.S. ——, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995). Here, there was evidence that Donna's net income would have been some $300,000 under the Howell contract. Given the flaws in Ryan's calculation as pointed out by Howell, the jury could reasonably have concluded that some lesser award was more appropriate. We cannot say the jury's award of net lost profits in this case is clearly outside the range of evidence presented at trial. *See id.* Accordingly, we hold there is sufficient evidence to support the jury's findings of net lost profits Point of error one is overruled.

In point of error two, Howell contends the trial court should not have submitted Donna's non-contract claims because Donna's sole ground of recovery is for breach of contract. Alternatively, Howell contends there is insufficient evidence to support Donna's non-contract claims.

In deciding whether a plaintiff may recover in tort, contract, or both, the court must determine whether: (1) the claim is for breach of a duty created solely by contract rather than a duty imposed by law; and (2) the injury is only the economic loss to the subject of a contract itself. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex.1991); *Jim Walter Homes Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). Howell argues the duty to deliver feedstocks arises solely from its alleged supply contract with Donna and MG. It also argues Donna's only damages are economic loss caused by Howell's alleged failure to deliver under that contract, not by any false, misleading, or deceptive act. In support of its argument, Howell cites the line of cases holding that "an allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Services Corp.,* 661 S.W.2d 933, 935 (Tex.1983); *Helms v. Southwestern Bell Tel. Co.,* 794 F.2d 188 (5th Cir.1986); *Dura–Wood Treating Co. v. Century Forest Indus.,* 675 F.2d 745 (5th Cir.), *cert denied,* 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982).

Recently, the Texas Supreme Court in *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12 (Tex.1996) *(per curiam)* clarified the distinction between a contract claim and a DTPA claim for false, misleading or deceptive acts or practices. In that case, Bell's representative, Crawford, made several statements to Ace Sign's president during negotiations to renew Ace Sign's yellow pages ad. 917 S.W.2d at 13. Specifically, Crawford stated:

---

**3.** Arguing that lost profits resulting from a specific transaction are recoverable, Donna speculates the jury's award is based on the total increase in the cost of feedstocks under the reinstated Koch contract as compared to the Howell contract. Lost profits are recoverable regardless of whether a business operates at a loss if the plaintiff can demonstrate that the profits were lost as a result of a specific transaction. *Frank B. Hall v. Beach Inc.,* 733 S.W.2d 251 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). However, Donna did not submit a question, instruction, or definition on "lost profits from a specific transaction" for any of its claims. As we observed, the only question and definition in this case was on "loss of net profits." This is not to say that expenses in mitigating economic loss are not recoverable. under the DTPA. *See, e.g., Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914, 924 (Tex.App.—Waco 1985, writ dism'd). Rather, Donna's increased feedstock costs under the reinstated Koch contract simply is not a "loss of net profits."

(1) Ace Sign's ad would be published upon payment of the contract price; (2) Ace Sign's payment history required advanced payment for the renewal; (3) Ace Sign was heavily dependent on yellow pages advertising; and (4) a yellow pages ad would increase Ace Sign's business. *Id.* When Bell failed to print the ad, Ace Sign sued Crawford and Southwestern Bell for breach of contract, negligence, and DTPA violations. *Id.* at 13. Reaffirming the principles stated in *DeLanney* and citing the cases relied upon by Howell in this case, the court held "Crawford's statements were nothing more than representations that the defendants would fulfill their contractual duty to publish and that the breach of that duty sounds only in contract." *Id.* at 13–14. The court observed:

> The statements themselves did not cause any harm. The failure to run the advertisement (the breach of contract) actually caused the lost profits, and the injury is governed by contract law, not the DTPA.

*Id.* at 14–15.

■■■■■■ Howell argues Donna's claim is similar to the claim in *Crawford* and to those in the cases cited therein. We disagree. The duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract and thus, is actionable under the DTPA. *Decision Control Sys. v. Personnel Cost Control, Inc.,* 787 S.W.2d 98, 100–101 (Tex.App.—Dallas 1990, no writ). The fact that damages are "economic" does not mean they may not be damages for tort or violation of the DTPA. *See American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.* 798 S.W.2d 274, 278 (Tex. 1990); *Busse v. Pacific Cattle Feeding Fund,*

896 S.W.2d 807, 817 (Tex.App.—Texarkana 1995, writ denied).

In its sixth amended petition, Donna generally alleges that it was fraudulently induced not only into entering the supply contract with Howell, but also cancelling its supply contract with Koch based on Stewart's false representation that Howell had a contract with Shell to obtain crude oil from Shell's McAllen Ranch Field. Thus, this case is clearly distinguishable from *Crawford* where the defendants merely made statements that they would perform the contract and the nonperformance of the contract alone caused the harm. 917 S.W.2d at 14. Rather, this case is more like *Lone Star Ford, Inc. v. Hill,* 879 S.W.2d 116 (Tex.App.—Houston [14th Dist.] 1994, writ pending). In *Lone Star,* the plaintiff sued Lone Star for damages after Lone Star sold him a used car that had already been sold to someone else. 879 S.W.2d at 117–118. Lone Star's salesman induced the plaintiff into the sale by failing to disclose that the previous buyer had not cancelled the purchase of the car. *Id.* at 119 (citing TEX. BUS. & COM.CODE ANN. § 17.46(b)(23)). This court upheld the plaintiff's recovery for violation of the DTPA because the evidence showed the defendant engaged in deceptive or misleading acts "in addition to any breach of contract claim." *Id.* Although *Lone Star* involved a failure to disclose which induced the plaintiff into the transaction, it applies equally to a situation where, as here, the defendant makes an affirmative misrepresentation to induce the plaintiff into one transaction and cancel another.[4]

■■■■■■ Having determined Donna's claim is actionable under the DTPA, we now

---

4. Howell insists that even if it violated a duty arising independent of the contract, Donna suffered only contract damages. As observed by the Fifth Circuit, "the Texas cases have [been] sharply divided as to whether there must be proof of tort damages separate and independent from damages for breach of contract when the conduct violates duties independent of the contract." *National Union Fire Ins. Co. v. Care Flight Air Ambulance Service, Inc.,* 18 F.3d 323, 328 n. 1 (5th Cir.1994). *National Union* cites two cases from this court which require such proof. *See Barbouti v. Munden,* 866 S.W.2d 288, 293–94 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Hebisen v. Nassau Development Co.,* 754

S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988, writ denied). However, neither *Barbouti* nor *Hebisen* involved DTPA claims. While Donna claimed damage from the alleged breach of the contract, that damage also resulted from Howell's alleged "false, misleading, or deceptive acts" which Donna claimed induced it to enter into the contract in the first place and cancel another contract. *See e.g., Busse,* 896 S.W.2d at 817. The fact that Donna also sought recovery in contract does not defeat its DTPA recovery because the remedies provided by the DTPA are cumulative of other legal remedies. *See* TEX. BUS. & COM.CODE ANN. § 17.43 (Vernon Supp.1996).

address Howell's sufficiency argument. In answer to question one regarding DTPA violations, the jury found the following acts, among others, were a producing cause of Donna's damages: (1) "represented that the crude oil had sponsorship approval, characteristics, uses, benefits or quantities, that it did not have;" (2) "advertised the crude oil with intent not to sell it as advertised;" and (3) "represented that an agreement conferred or involved rights, remedies or obligations that it did not have or involve." [5] As stated in *Kuehnhoefer v. Welch*, 893 S.W.2d 689, 693 (Tex.App.—Texarkana 1995, writ denied):

> The essence of false, misleading or deceptive conduct is that such conduct is false, misleading or deceptive at the time the conduct occurs. In this manner, it differs from an ordinary breach of contract. This was a sufficient finding upon which to base a DTPA action.

893 S.W.2d at 693.

The uncontroverted evidence is that Howell never had a contract to purchase crude from Shell's McAllen Ranch Field. Thus, the primary issue for the jury was whether Stewart in fact represented that Howell had such a contract with Shell. There is conflicting evidence on this point, with witnesses for Donna testifying that Stewart made such a representation and Howell's witnesses denying that fact. Under the well-settled standard of review, the jury is the sole judge of the credibility of the witnesses and was entitled to believe Donna's witnesses instead of Howell's witnesses. *See Herbert*, 754 S.W.2d at 142; *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Accordingly, we not only hold the trial court properly submitted Donna's DTPA claim to the jury, but also that the evidence is sufficient evidence to support the jury's finding of DTPA violations. Point of error two is overruled.

In points of error three and four, Howell complains about the submission of lost profits as an element of damages.

The standard of review for a court's charge is whether the trial court abused its discretion. Tex.R. Civ. P. 277; *Texas Dept. of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The trial court has wide discretion in submitting jury questions as well as instructions and definitions. *Harris County v. Bruyneel*, 787 S.W.2d 92, 94 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (opin. on motion for reh'g). Jury charge error is reversible only if, when viewed in light of the totality of these circumstances, it amounted to such a denial of rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment. Tex. R.App. P. 81(b)(1); *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

Howell argues the trial court should not have submitted lost profits because (1) it is not the proper measure of damages, (2) there was no limiting instruction on the foreseeability of such damages, and (3) there is no evidence the DTPA violations caused damage to Donna. These contentions are without merit. First, "lost profits" are recoverable under the DTPA. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992); Metro Ford Truck Sales v. Davis, 709 S.W.2d 785, 792–93 (Tex.App.—Fort Worth), *opin. on motion for reh'g*, 711 S.W.2d 145 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). Second, the question on lost profits complies with PJC 110.05 of the Texas Pattern Jury Charge which does not require foreseeability. 4 State Bar of Texas, Texas Pattern Jury Charges PJC 110.05 (1994). Third, Howell's sufficiency argument is simply a rehash of its breach of contract argument. In other words, Howell says its failure to deliver crude of any quality caused Donna to lose profits, not any misrepresentation about the quality of crude to be supplied.

---

5. Although the parties to the transaction at issue were sophisticated businessmen, the jury also found Howell "engaged in an unconscionable course of action" defined as "an act or practice that, to a person's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree." *See* Tex. Bus. & Com.Code Ann. §§ 17.45, 17.46(b). Because we find Howell engaged in false, misleading or deceptive conduct, we do not reach the question of whether that same conduct was also unconscionable.

The jury was instructed that a "producing cause" means "an efficient, exciting, or contributing cause that in a natural sequence, produced the damages, if any" and that "there may be more than one producing cause." Wilt testified that if not for Stewart's false statement that Howell had obtained oil from the Shell McAllen Ranch Field, Donna would not have entered into the contract breached by Howell or cancelled the contract with Koch. Furthermore, Stewart admitted that if he had in fact obtained the Shell oil, Howell would have gone through with the deal. Thus, the jury could reasonably have concluded that Stewart's conduct and therefore, Howell's conduct, was "an efficient, exciting, or contributing cause that in a natural sequence, produced damages" to Donna. The trial court did not abuse its discretion in submitting lost profits to the jury. *See* TEX.R. CIV. P. 277; *Texas Dept. of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

█ In point of error five, Howell contends Donna's recovery for breach of contract is barred because Howell was not in privity with Donna. Because Donna elected recovery under the DTPA and because privity is not a requirement for consumer status under the DTPA, we need not address this point of error. *See Lara v. Lile*, 828 S.W.2d 536, 541, 542 (Tex.App.—Corpus Christi 1992, writ denied).

█ In cross-point one, Donna contends the trial court erred in refusing to enter judgment awarding damages for the loss of the refinery enterprise.

During the trial, Ryan testified at length about the value of the refinery using three methods: replacement value, comparable sales, and net present value. Relying on the comparable sales method, which he considered the most reliable, Ryan testified the refinery was worth $800,000 to $1.2 million as of July 1989. In the damage question submitted with each cause of action, the jury was asked to award Donna damages for the loss of value of Donna's refinery enterprise.

The jury awarded $1,000,000. Upon Howell's post-verdict motion, the trial court disregarded this finding.

█ A trial court may disregard a jury's finding and grant a motion to disregard jury findings only when there is no evidence to support the jury's finding. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex. 1986) (citing TEX.R. CIV. P. 301). Donna argues the loss of the refinery enterprise is an element of consequential damages caused by Howell's conduct and that the court should not have disregarded the jury's finding on this issue based on Ryan's uncontroverted testimony. Howell argues the loss of the refinery enterprise, if a proper element of legal damage, belongs only to the individual partners, not to Donna and that there is no evidence to support damages for loss of the refinery enterprise.[6] We agree.

█ Ryan's testimony about the value of the refinery is not evidence of the loss of the refinery enterprise because the refinery is an asset, not an enterprise. An enterprise is "a business venture or undertaking." BLACK'S LAW DICTIONARY 531 (6th ed.1990). The enterprise in this case was the business of the Donna limited partnership. The refinery was not an asset of that business because the partnership only leased the refinery. Thus, the lease was Donna's asset, not the refinery. There is no evidence of the value of that lease. As we noted, this suit was brought by the Donna limited partnership for the benefit of the former partners. These partners sold their partnership interests, which presumably included the value of the lease, but retained the rights to the partnership's claims against Howell. Thus, the only loss was each former partner's interest in the partnership. While loss of capital investment may be recovered under the DTPA, there is no evidence of the value of those interests nor of the lease. *See Henry S. Miller*, 836 S.W.2d at 162. Accordingly, we hold there is no evidence to support the jury's award for loss of refinery enterprise and that the trial court properly disregarded

---

6. Contrary to Donna's suggestion, these arguments do not differ from those presented to the trial court.

the jury's finding. Cross-point one is overruled.

 In cross-point two, Donna contends the trial court erred in assessing one-fourth of the court costs against Donna and in reducing Donna's appellate attorney's fees.

Although Donna succeeded on each of its causes of action, the trial court, without any explanation, assessed one-forth of the court costs against Donna. Rule 131 of the Rules of Civil Procedure provides in part: "the *successful* party to a suit *shall* recover of his adversary *all* costs incurred therein...." Tex.R. Civ. P. 131 (Vernon 1979) (emphasis added). Rule 141 states "the court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law of these rules." Tex.R. Civ. P. 141 (Vernon 1979). Thus, rule 131 requires that the successful party to a suit recover costs from the adverse party, unless the trial court finds good cause to adjudge the costs otherwise and states its reasons on the record pursuant to rule 141. *Contemporary Health Management, Inc. v. Palacios*, 832 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1992, no writ).

 The proper standard for reviewing a trial court's good cause is to determine whether the trial court clearly abused its discretion. *Id.* at 746. Howell suggests the court's actions were not improper because Howell's parent company, Howell Corporation, was dismissed on a motion for directed verdict; therefore, Donna was not a "successful party" under rule 131. A "successful party" is one who obtains a judgment of a competent court vindicating a civil claim of right. *Perez v. Baker Packers*, 694 S.W.2d 138, 143 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Clearly, Donna was a successful party within the meaning of rule 131.

Here, the trial court did not state the reasons for assessing costs contrary to the rule. In the absence of any explanation for its actions, the trial court abused its discretion in assessing one fourth of the court costs against Donna. *See Guerra v. Perez & Assoc.*, 885 S.W.2d 531, 533–34 (Tex.App.— El Paso 1994, no writ); *see also Dover Eleva-*tor Co. v. Servellon*, 812 S.W.2d 366, 367 (Tex.App.—Dallas 1991, no writ).

 Finally, Donna points out the amount of appellate attorney's fees found by the jury was based on counsel's testimony that she was to receive 45% of recovery in the event of appeal. As we noted, the trial court reduced the amount found by the jury. Although Donna's point of error complains that the court's action was error, Donna does not present argument in support of that complaint; therefore, it is waived. Tex.R.App. P. 74. Instead, Donna merely requests that **in the event** we award damages for loss of the refinery enterprise, that we increase the amount of appellate attorney's fees to conform to the percentage of recovery stated by counsel. Having determined loss of the refinery enterprise is not recoverable, Donna's request is moot. Cross-point two is sustained insofar as the trial court failed to award Donna all court costs.

In cross-point three, Donna contends the trial court erred in disregarding the damage findings for negligent misrepresentation and fraud. Donna acknowledges consideration of this point is only necessary if it is not entitled to recovery under the DTPA. Because Donna is entitled to its DTPA recovery, we need not address cross-point three.

Accordingly, we affirm the trial court's judgment but modify the judgment to allow Donna recovery of all court costs.