Motion for Rehearing Overruled; Affirmed; Memorandum Opinion of June 29,
2004, Withdrawn and Substitute Memorandum Opinion filed September 9, 2004









Motion for Rehearing Overruled; Affirmed; Memorandum
Opinion of June 29, 2004, Withdrawn and Substitute Memorandum Opinion filed
September 9, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00021-CV

____________

 

A.I.G.
CONSTRUCTION COMPANY, INC., Appellant

 

V.

 

DAVE
THOMSON, INDIVIDUALLY AND D/B/A WATERSIDE COMPANY, Appellee



 



 

On Appeal from the 258th District Court

Trinity County, Texas

Trial Court Cause No. 18,176

________________________________________________________________________

 

S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We overrule the motion for rehearing filed by appellant
A.I.G. Construction Company, Inc.  We
withdraw the memorandum opinion issued in this case on June 29, 2004, and we
issue this memorandum opinion in its place. 









In this case, we must determine whether a subcontractor=s representation concerning goods and
services constitutes a violation of the Texas Deceptive Trade
Practices-Consumer Protection Act (ADTPA@) or whether the alleged failure in
the representation is merely a breach of the subcontractor=s promise to perform under the
contract.  We conclude that on the facts
presented by this record, reasonable minds could differ as to whether the
subcontractor violated the DTPA.  Accordingly,
we affirm the trial court=s judgment. 

I.  Factual and Procedural Background

Appellee Dave Thomson d/b/a
Waterside Company (AThomson@) was in
the construction business.  In 2000, he
was approached regarding a large piece of business requiring pile-driving
expertise.  Lacking this type of
experience, Thomson sought to retain a pile driver through the Yellow Pages
telephone directory.  Thomson contacted
several area contractors advertising pile-driving services, and he received a
return call from Richard Goff, President and Chief Executive Officer of
appellant A.I.G. Construction Company, Inc. (AA.I.G.@).  Thomson met with Goff and some of his
associates and viewed some of A.I.G.=s
work.  According to Thomson, Goff
represented that he had the expertise, manpower, and equipment to drive pilings
and build bulkheads in a good and workmanlike manner.[1]
 Specifically, Thomson testified Goff
stated, Ahe had
been doing it [this type of work] all his life and his father and grandfather
were in the business, third generation.@  Thomson did not receive the particular piece
of business that had prompted his initial contact with A.I.G., but the parties
entered into an oral agreement under which A.I.G. was to provide the labor and
equipment on certain other projects Thomson obtained in Trinity and Polk
Counties.   








One of the projects required
A.I.G. to construct a bulkhead on waterfront property (the AHarris
Project@).  According to Thomson=s
testimony, A.I.G. was also responsible for installing backfill on the Harris
Project; however, Goff disagreed that this task was a part of the parties=
agreement.  Thomson testified that A.I.G.
did not build the bulkhead straight and did not completely finish the backfill
on the Harris Project.  When Thomson=s client
was not satisfied with the work on the Harris Project, Thomson was forced to
obtain another piece of equipment for the job, lower the price of the bulkhead,
and hire another operator to finish the backfill.   

On the second project, A.I.G. was
hired to drive pilings for a boathouse (Athe
Tomlinson Project@).  Thomson noticed the pilings were not in
alignment and he contacted Gary Bennett, a field inspector with the Trinity
River Authority for his opinion.  Bennett
notified Thomson that the pilings on the boathouse were not straight.  Thomson contacted Goff to inform him of the
misalignment, and Goff attempted to remedy the situation by banding the
pilings, a technique that was unsuccessful. 
In addition, testimony indicates that there were problems with the crew
on the Tomlinson Project.  Both the
foreman and the crew abandoned the job at some point.  Thomson testified that his client was not
happy with the work on the Tomlinson Project and that Thomson hired another
subcontractor to complete the work.








Thomson paid A.I.G. a sum of
$15,438.66 for the work on the Harris and Tomlinson Projects.  In March of 2001, Thomson filed two lawsuits,
one in Polk County and the other in Trinity County; the suits were consolidated
in Trinity County.  In his third amended
petition, Thomson sued A.I.G. and Goff individually, alleging breach of
contract and violations of the DTPA and the Residential Construction Liability
Act (ARCLA@).  A jury found no breach of contract, but
concluded A.I.G. had violated the DTPA by misrepresenting that its goods or
services would be of a particular quality. 
No RCLA question was submitted to the jury.  The jury awarded $6,000 in damages based on the
DTPA violation and made findings as to Thomson=s
reasonable attorney=s
fees.  The trial court entered judgment
that Thomson recover actual damages based on the jury=s
verdict, plus attorney=s fees
for trial in the sum of $12,875; $25,000 in attorney=s fees in
the event A.I.G. unsuccessfully challenged the judgment in the court of
appeals; and $20,000 in the event A.I.G. unsuccessfully challenged the judgment
in the Texas Supreme Court, in addition to interest and court costs.  The trial court further ordered that Thomson
take nothing from Goff individually. 
A.I.G. filed a motion for judgment notwithstanding the verdict on the
basis that the only evidence offered by Thomson in support of his DTPA claim
was an alleged mere promise by A.I.G. to perform its contract.  At the conclusion of a hearing on the matter,
the trial court denied the motion.

II.  Issues and Analysis

In its first issue, A.I.G. argues
that the trial court erred by granting judgment on Thomson=s DTPA
claim when the only evidence in support of his claim was an alleged mere
promise to perform under the oral agreement between the parties.  A.I.G. contends the trial court erred in
denying its motion for judgment notwithstanding the verdict, which asserted
this argument.  A.I.G. does not challenge
the sufficiency of the evidence to support the jury=s finding
that A.I.G. misrepresented the standard, quality, or grade of its goods or
services.  Nor does A.I.G. contend Goff=s
statement to Thomson amounted to puffing. 


We review a denial of a motion
for judgment notwithstanding the verdict under a legal sufficiency
standard.  See Navarette v. Temple
Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986).  We view the evidence in the light most
favorable to the jury=s
verdict, considering only the facts and inferences that support it.  Id. 
If more than a scintilla of evidence exists supporting the jury=s
verdict, the motion for judgment notwithstanding the verdict was properly
denied.  See Mancorp, Inc. v.
Culpepper, 802 S.W.2d 226, 228B30 (Tex.
1990).  Evidence supporting a finding
amounts to more than a scintilla if the evidence supporting the finding rises
to a level that would allow reasonable people to differ in their
conclusions.  See Burroughs Wellcome
Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).  








The DTPA prohibits A[f]alse,
misleading, or deceptive acts or practices in the conduct of any trade or
commerce.@ 
Tex. Bus. & Com. Code Ann.
' 17.46(a)
(Vernon 2002).  Section 17.46(b) is a
laundry list of specifically prohibited acts. 
Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 501 (Tex. 2001).  Section 17.46(b)(7) prohibits Arepresenting
that goods or services are of a particular standard, quality, or grade, or that
goods are of a particular style or model, if they are of another.@ '
17.46(b)(7).  Actionable representations
may be oral or written.  Wilkins,
47 S.W.3d at 502.  A party need not prove
intent to make a misrepresentation under section 17.46(b)(7); making the false
representation itself is actionable.  Id.  For a consumer to maintain an action for this
violation, the consumer must show that the misrepresentation was a producing
cause of his damages and that the consumer relied on the misrepresentation to
his detriment.  '
17.50(a)(1)(A)B(B). 

A.I.G. relies heavily on Crawford
v. Ace Sign, Inc. in support of its contention that the representation made
by Goff constituted a mere promise to perform and not a violation of DTPA
section 17.46(b)(7).  In doing so, A.I.G.
also argues Thomson=s
damages, like those in Crawford, arose solely out of the contract and
not as a result of any misrepresentations. 
See Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14B15 (Tex.
1996) (per curiam).  In Crawford,
Ace Sign alleged that Crawford made several misrepresentations during a meeting
concerning an advertisement in the Yellow Pages.  Id. at 13B14.  Crawford represented that the advertisement
would be published upon payment; that advanced payment was required; that Ace
Sign was heavily dependent on Yellow Pages advertising; and that an
advertisement would increase Ace Sign=s
business.  Id. at 14.  The Crawford court held that these
statements were representations that the defendants would fulfill their
contractual obligation to publish the advertisement, not misrepresentations
resulting in a violation of the DTPA.  Id.
at 14B15.  In addition, the Crawford court noted
that the statements themselves did not cause any harm; rather, the damages
arose from the breach of the contract.  Id.









In this case, Thomson testified
that Goff orally represented he had the ability to perform the work in a good
and workmanlike manner.[2]  Thomson also stated that he relied on Goff=s expertise
in pile driving and building bulkheads and hired him because Goff had the
appropriate equipment for the jobs.  We
disagree with A.I.G. that this situation presents facts analogous to those in Crawford.  Crawford represented that the advertisement
would be printed and it was not.  See
Crawford, 917 S.W.2d at 13.  In this
case, Goff represented to Thomson that he had the ability to perform the work
in a good and workmanlike manner, a statement beyond the agreement the parties
had for A.I.G. to drive pilings and build bulkheads.  See Howell Crude Oil Co. v. Donna Refinery
Partners, Ltd., 928 S.W.2d 100, 108B09 (Tex. App.CHouston [14th Dist.] 1996,
writ denied) (distinguishing Crawford when defendant made affirmative
misrepresentation during contract formation in violation of DTPA and
independent of contract).  Further, the
jury found A.I.G. did not breach the contract, but did violate section
17.46(b)(7) of the DTPA.  Under that
reasoning, the jury must have found that Thomson=s damages
were caused by his reliance on A.I.G.=s
representation rather than a breach of the parties=
agreement.  Under these circumstances, Crawford
does not apply.[3]  See id. at 108B09;
see also Jim Walter Homes, Inc. v. Valencia, 690 S.W.2d 239, 240B42 (Tex.
1985) (affirming jury=s finding
of knowing DTPA violation when builder represented house was constructed in
good, substantial, and workmanlike manner and it was not); Jim Walter Homes,
Inc. v. Gonzalez, 686 S.W.2d 715, 718B19 (Tex. App.CSan Antonio 1985,
writ dism=d) (finding knowing
misrepresentation under DTPA section 17.46(b)(7) when builder represented by
contract that house would be built, constructed, and completed in good,
substantial, and workmanlike manner and it was not); Jim Walter Homes, Inc.
v. Chapa, 614 S.W.2d 838, 841 (Tex. App.CCorpus Christi 1981, writ ref=d n.r.e.)
(finding misrepresentation of good, substantial, workmanlike manner is
sufficient to violate section 17.46(b)(7) of the DTPA).  

In Barnett v. Coppell North
Texas Court, Ltd., Barnett challenged the legal sufficiency of the evidence
to support the jury=s DTPA
findings, including a violation of section 17.46(b)(7).  See Barnett v. Coppell North Texas Court,
Ltd., 123 S.W.3d 804, 822 (Tex. App.CDallas 2003, pet. denied).  Lewis, the owner of the facility to be
constructed by Barnett, testified he had no experience bidding construction
projects and, therefore, relied on Barnett to oversee the project.  Id. 
Barnett made representations regarding the cost of the project, the
completion date, that he had adequate crews, and that the quality would be Agreat.@  Id. at 822B23.  With regard to the quality, Lewis testified
that the concrete piers were not placed properly and structural changes were
necessary because the company Barnett hired went bankrupt, which caused delay.  Id. at 815.  Based on Barnett=s
representations, and the fact that Lewis testified he relied on Barnett=s
representations in making the decision to hire him, the court found the
evidence sufficient to support the jury=s
findings that Barnett violated the DTPA. 
Id. at 823. 

As in Barnett, Thomson
testified that he did not have experience with building bulkheads or driving
pilings at that time, nor did he possess the proper equipment to do such work.  He stated that he relied on Goff=s
expertise in those areas and hired Goff because Goff had the necessary
equipment.  Thomson testified that on the
Harris Project, the bulkhead was not straight and on the Tomlinson Project, the
pilings were not in alignment.  Though
the testimony regarding the representations made is sparse, reasonable minds
could differ as to whether A.I.G. violated the DTPA under the facts in this
case.  Accordingly, we overrule A.I.G.=s first
issue.








In its second issue, A.I.G.
claims the trial court erred by granting judgment for recovery of attorney=s fees
when Thomson was not entitled to recover on the DTPA claim. Because we have
concluded the trial court correctly denied A.I.G.=s motion
for judgment notwithstanding the verdict on the DTPA claim, we find no merit in
A.I.G.=s second
issue regarding the award of attorney=s
fees.  Thomson prevailed on the DTPA
claim and therefore was entitled to obtain an award of attorney=s fees
under the DTPA.  See Tex. Bus. & Com. Code Ann. ' 17.50(d)
(Vernon 2002).  Accordingly, we overrule
A.I.G.=s second
issue.

                                                            III.  Conclusion

We hold that the trial court did
not err in denying A.I.G.=s motion
for judgment notwithstanding the verdict because, based on Goff=s
representation that he had the ability to perform the work in a good and
workmanlike manner, reasonable minds could differ as to whether A.I.G. violated
the DTPA under the facts in this case. 
Because Thomson prevailed on his DTPA claim, he was entitled to attorney=s fees
under the statute.  

We affirm the trial court=s
judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Substitute Memorandum Opinion filed September 9, 2004.

Panel
consists of Justices Edelman, Frost, and Guzman.

 











[1]  In addition,
Goff testified that in October of 2000, A.I.G. held itself out as being an
expert in the areas of building boathouses, decks, and structures over, in, and
around water.





[2]  Q:  ADid he represent to you that he had the expertise, had the
knowledge, had the know-how, had the manpower, had the equipment to drive
pilings, build bulkheads in a good and workmanlike manner?@

    A:  AYes.  He said he had been doing it almost all his
life and his father and grandfather were in the business, third generation.@





[3]  A.I.G. insists
that Thomson=s damages, like those in Crawford, arose solely
out of the contract.  In support of its
contention, A.I.G. argues the damages were for corrective work done after
A.I.G. performed under the contract and, therefore, were not incurred as a
result of any misrepresentation that occurred during contract formation.  We disagree. 
Thomson testified that, prior to entering into their oral agreement,
Goff represented he had the ability to perform work of this type in a good and
workmanlike manner.  Thomson presented
evidence of costs incurred to correct the misaligned pilings on the Tomlinson
Project.  He also stated that the price
of the bulkhead on the Harris Project had to be lowered because the client was
not completely satisfied with the work on the bulkhead.  Unlike the damages in Crawford, these
damages arose not from a failure to perform under the contract, but from
Thomson=s reliance on A.I.G.=s
misrepresentation as to the quality of its services.  See Howell, 928 S.W.2d at 109 &
n.4.