**Affirmed and Memorandum Opinion filed December 11, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00793-CV

---

### AKRAM MUSHTAHA, Appellant

### V.

### TILE ROOFS OF TEXAS, Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2010-31789**

---

## MEMORANDUM OPINION

This is an appeal from a final judgment rendered after a trial by jury. The question is whether the evidence is legally and factually sufficient to support the jury's findings. For the reasons explained below, we conclude that the evidence is sufficient, and we affirm the trial court's judgment.

## BACKGROUND

This case is a breach of contract action between a roofing company and a homeowner. The primary dispute focuses on the installation of tile shingles in an area of the roof known as the valley. The valley is the site where two planes of the roof intersect and form a trough. A valley can be found wherever one portion of the roof branches out from another on a perpendicular angle, such as a dormer. The valley is sloped so that it may function as a conduit, collecting rainwater from the sides of the roof and channeling it away from the structure. Its design is intended to prevent rainwater from pooling.

A valley can be either open or closed. When a valley is open, its metal lining is visible to the naked eye. When a valley is closed, the lining is covered by the same material used to shingle the roof. Both methods of installation are accepted within the industry.

As will be seen in this case, one advantage of having a closed valley system is aesthetics: the shingles blend together seamlessly between all planes of the roof, creating a uniform look. There is a disadvantage, however. Over time, the functionality of a closed valley system can deteriorate in the presence of certain environmental factors. If leaves, pine needles, or other debris accumulate in the valley, they can impede the natural drainage of the roof. And in really bad cases, this accumulation can cause rainwater to spill under the shingles adjacent to the valley, causing the roof to leak.

Akram Mushtaha, the homeowner in this case, had a tile roof with a closed valley system that was damaged by Hurricane Ike. Mushtaha entered into a contract with Tile Roofs of Texas to replace the roof on his home. The contract provided that the tile was to be installed "as per industry specifications" and that the valleys were "to be open." Mushtaha did not inquire into the meaning of these

2

terms. His only concern during the negotiation stage was the cost of the project. The parties bargained for a contract price of $102,000, with fifty percent due at signing and the rest due upon completion.

During the demolition process, Tile Roofs found that Mushtaha's closed valley system had not been functioning properly. The valleys were heavily clogged with dirt and debris. When the tile was removed, the plywood under the valleys was rotting. The rot showed several years' worth of water intrusion, which predated Hurricane Ike. Tile Roofs replaced the plywood at no additional cost to Mushtaha.

As the new tile was being installed, Mushtaha noticed that the valleys on his new roof were not resembling the valleys on his old roof. Mushtaha demanded that Tile Roofs change the valleys to make them closed. Tile Roofs explained to Mushtaha that the valleys were being installed according to the terms of the contract. Tile Roofs also advised that a closed valley system was not recommended because Mushtaha lived in a wooded area with tall trees, and debris from those trees had accumulated in the valleys and had caused his previous roof to leak.

Mushtaha complained as well about the appearance of the tiles at the edge of his roof, in an area known as the rake. Mushtaha demanded that Tile Roofs reinstall the rake tiles to make them appear as before. Tile Roofs responded that the original installation of the rake tiles had been backwards. Tile Roofs explained that installing the rake tiles in any manner contrary to the industry specifications would cause the roof to leak, leading to the destruction of the fascia boards.

Mushtaha persisted, stating that he wanted his new roof to look exactly as his old roof. Tile Roofs offered to redo the valleys as closed and to install the rake tiles backwards, but only if Mushtaha paid for the extra labor and waived his warranty by signing a letter acknowledging that he had requested the installation to

be against the manufacturer's instructions. Mushtaha refused the offer and ordered Tile Roofs to leave his property.

At the time of the parties' disagreement, the new roof was between eighty and eighty-five percent complete. Mushtaha hired another roofing company to finish the roof in the manner he desired. Tile Roofs was never invited back to the premises, despite several attempts to resolve the parties' dispute.

Tile Roofs filed this lawsuit, alleging a single cause of action for breach of contract. Mushtaha counterclaimed, but the counterclaims were dismissed. At trial, Tile Roofs produced evidence showing that it had spent $60,000 on labor and materials, and that it would have realized a profit of $20,000 as of the time it was ordered to stop working. Mushtaha responded that Tile Roofs had been installing the new roof against industry standards, and he claimed that Tile Roofs had repudiated the contract by choosing to walk away from the project.

The jury made the following findings: (1) Mushtaha failed to comply with the contract; (2) Mushtaha's failure to comply was not excused; and (3) Tile Roofs was entitled to $27,500 in damages, plus attorney's fees.

## ISSUES PRESENTED

Mushtaha appears pro se on appeal, and he asserts several issues in his brief. However, not all of the issues are presented in a manner that comports with the Texas Rules of Appellate Procedure. For example, Mushtaha asserts early in his brief that he intends to challenge the award of attorney's fees and the striking of his counterclaims, but there are no arguments on either point. Without arguments, Mushtaha has failed to comply with the appellate briefing rules. Accordingly, we overrule these points as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

We limit our review to the only issues that have been adequately presented: whether the evidence is legally and factually sufficient to support the jury's findings on liability and damages.

## ANALYSIS

### A.    Breach

We begin with the jury's finding that Mushtaha failed to comply with the terms of the contract. In a legal sufficiency challenge, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support the challenged finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819, 827 (Tex. 2005). We will sustain a legal sufficiency challenge only when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

The record reflects that Mushtaha executed a contract with Tile Roofs to replace his roof. After a dispute arose over the appearance of the new roof, Mushtaha ordered Tile Roofs to stop working and leave his property. Mushtaha never permitted Tile Roofs to reenter the property and finish the project, even though Tile Roofs was willing and able to finish. Mushtaha also failed to pay Tile Roofs any amount beyond the initial deposit. Based on this record, we conclude that the evidence is legally sufficient to show that Mushtaha breached the contract. *See Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.*, 899 S.W.2d 666, 670 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("When one party to a

5

contract, by wrongful means, prevents the other party from performing, this interference with performance constitutes breach of contract.").

Mushtaha argues next that the evidence is factually insufficient to support the finding of breach. When a party challenges the factual sufficiency of a finding for which he did not bear the burden of proof at trial, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). Under this standard, we may not pass upon the credibility of witnesses or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Id.* at 407.

Mushtaha contends that the evidence is factually insufficient because the record shows that he was willing to pay for a new roof if Tile Roofs duplicated his old roof. This point is a red herring. The contract did not provide for the "duplication" of Mushtaha's old roof. By expressly stating that the valleys would be open rather than closed, the contract clearly indicated that the new roof would look and function differently from the old roof. The contract also expressly stated that the roof would be installed "as per industry specifications." The jury was asked to determine whether Mushtaha had breached *this* contract, and it is against that question that we must measure the sufficiency of the evidence. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003); *Kamat v. Prakash*, 420 S.W.3d 890, 899 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Mushtaha cannot show that the jury's finding of breach is clearly wrong and manifestly unjust because he would have performed under a different contract.

Mushtaha argues next that the evidence is factually insufficient because the contract is ambiguous, and when the contract is construed in his favor, the record

6

shows that he did not fail to comply with it. Mushtaha believes that the contract is ambiguous because the words "industry specifications" and "open" valleys are undefined and capable of more than one reasonable interpretation. Even if we assumed that the contract were ambiguous, Mushtaha's understanding of the parties' intent was not conclusively established, and Mushtaha neither requested nor submitted to the jury any fact question regarding the issue of intent. Mushtaha waived any complaint about the contract's alleged ambiguity. *See* Tex. R. Civ. P. 279; Tex. R. App. P. 33.1.

Mushtaha cites to no other evidence tending to show that he did not breach the terms of the contract. We accordingly conclude that the jury's finding in support of breach is not so against the great weight and preponderance of the evidence as to render the judgment clearly wrong and manifestly unjust.

## B.    Excuse

The second jury question asked, "Was Mushtaha's failure to comply excused?" The charge instructions provided that the "failure to comply by Mushtaha is excused by Tile Roofs' previous failure to comply with a material obligation of the same Agreement." The jury answered the question in the negative. As before, Mushtaha asserts that the evidence is legally and factually insufficient to support the jury's finding.

Mushtaha had the burden at trial to demonstrate that his breach of contract was excused. *See Sassoon v. Thompson*, No. 14-02-00154-CV, 2003 WL 358703, at *3 (Tex. App.—Houston [14th Dist.] Feb. 20, 2003, pet. denied) (mem. op.). When a party attacks the legal sufficiency of an adverse finding on an issue on which he bears the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a "matter of law"

challenge, the reviewing court must first examine the record for evidence that supports the challenged finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

The evidence establishes that Tile Roofs did not fail to comply with a material obligation of the contract. When it was fired from the jobsite, Tile Roofs was installing the roof with open valleys, in accordance with the terms of the contract. Tile Roofs was also installing the rake tiles in accordance with the manufacturer's directions. Viewing this evidence in the light most favorable to the jury's finding, we conclude that there is legally sufficient evidence to show that Tile Roofs was performing under the contract and that Mushtaha had no excuse for his breach.

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, the party must demonstrate that the adverse finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 242. Our scope of review includes all evidence relevant to the adverse finding. *Id.*

Mushtaha asserts in his brief that his nonperformance was excused because Tile Roofs "simply chose to stop working." Mushtaha does not identify the date of this alleged repudiation, but in his brief, he refers to a meeting in September 2009, where the parties allegedly disagreed over funding matters and other work that had already been completed. The brief contains no record citations in support of these references, and we are not aware of any evidence that the meeting ever occurred. The uncontroverted evidence showed that demolition of the old roof began in October 2009 and installation of the new roof began in November 2009. Mushtaha

8

does not explain how any conflicts could have arisen over the installation of the new roof during a meeting held in September 2009.

Setting aside the timing of the alleged meeting, the record still fails to establish Mushtaha's claim that Tile Roofs "chose" to walk away from the project. There is evidence that Tile Roofs was prepared to finish the project under the terms of the contract, but Mushtaha completely refused. The record supports a finding that Mushtaha fired Tile Roofs, not that Tile Roofs quit.

Mushtaha argues next that Tile Roofs materially breached the contract because it was not installing the new roof according to industry standards. Mushtaha produced evidence from an inspector that the new roof had inconsistent spacing patterns between the tiles. The inspector testified that the ridge tiles were installed with substantially varying heights above the surrounding tiles. The inspector also expressed concerns over contact between the lead and copper flashing, which could result in corrosion. Finally, the inspector commented that Tile Roofs had appeared to be using old or damaged tar paper.

On cross-examination, the inspector established that he had no experience installing roofs and that he had performed his inspection entirely from ground level. Tile Roofs produced testimony showing that there may have been some problems with the roof, but it asserted that these problems would have been corrected on a final walkthrough had it been allowed to complete the job. This opinion was shared by the contractor hired by Mushtaha to finish the roof with closed valleys, who testified that Tile Roofs could have corrected the problems in an appropriate manner upon a final walkthrough. The jury was free to accept this evidence and find that Tile Roofs had not materially breached the contract when Mushtaha ordered Tile Roofs to stop working. The jury's finding that Mushtaha

had no excuse for his failure to comply is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

## C.    Damages

We finally address whether the evidence is legally and factually sufficient to support the jury's award of damages. The jury was asked to find "what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Tile Roofs for its damages, if any, that resulted from Mushtaha's failure to comply with the Agreement." The instructions further provided that the jury was to calculate Tile Roofs' lost contract profits as the measure of damages. Lost profits were defined as "the amount Mushtaha agreed to pay Tile Roofs less (a) the expenses Tile Roofs saved by not completing the job and (b) the amount paid to Tile Roofs by Mushtaha." The jury answered that Tile Roofs was entitled to recover $27,500 as a reasonable amount of damages.

The jury's finding is amply supported by the evidence adduced at trial. The undisputed evidence showed that Mushtaha paid $51,000 to Tiles Roofs before the project began, with a promise that the remaining balance on the contract would be paid when the project was completed. Tile Roofs produced additional evidence showing that, when it was ordered to stop working on the project, it had spent $60,000 on labor and materials, and it had accrued approximately $20,000 in profit from the work already performed. Tile Roofs received no other payments after being ordered to leave the job site.

Tile Roofs would have been fully compensated if at the time of breach it had been paid $29,000, which is the difference between the value of services provided to Mushtaha and the amount that Mushtaha had already paid to Tile Roofs ($60,000 + $20,000 − $51,000). The jury's award was $27,500, which is slightly less than that amount. As the trier of fact, the jury had the discretion to award

10

damages within the range of evidence presented at trial, and it did so here. *See Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.*, 928 S.W.2d 100, 108 (Tex. App.—Houston [14th Dist.] 1996, writ denied). The jury's finding is accordingly supported by legally sufficient evidence.

Mushtaha does not clearly explain how the evidence is factually insufficient to support the jury's finding. The only other figure discussed in his appellate brief is the amount he paid to another roofing company to complete the project. This evidence is irrelevant, however, because the jury was specifically instructed to calculate Tile Roofs' lost profits by deducting the expenses saved "by not completing the job." Without any controverting evidence to consider, we conclude that the jury's finding is supported by factually sufficient evidence.

## CONCLUSION

The judgment of the trial court is affirmed.

/s/    Tracy Christopher
       Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby.

11