**CONTEMPORARY HEALTH MANAGEMENT, INC.,
Appellant,**

v.

**Alfredo PALACIOS, et al., Appellees.**

**No. A14–91–00853–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 11, 1992.

Rehearing Denied July 2, 1992.

Jeffery Mundy, Houston, for appellant.

Richard A. Sheehy, Janet Evans, Nick C. Nichols, Samual A. Houston, Robert J. Swift, David A. Livingston, John H. Boswell, Houston, for appellees.

Before ROBERTSON, SEARS and ELLIS, JJ.

SEARS, Justice.

This is the second time Contemporary Health Management, Inc. ("CHM") has appealed the trial court's taxation of guardian ad litem fees against CHM. Previously, this Court reversed the judgment of the trial court because it failed to state good cause for taxing costs against CHM. *Contemporary Health Management, Inc. v. Palacios*, No. A14–89–00073–CV slip op. at 5–6, 1990 WL 132208 (Tex.App.—Houston [14th Dist.] Sept. 13, 1990, writ denied); Tex.R.Civ.P. 131, 141. On remand, the trial court held a hearing, then explained on the record and in an amended judgment its reasons for taxing 60.3 percent of the guardian ad litem's fees against CHM. In four points of error, CHM contends that (1) the manner in which the trial court conducted the hearing violated CHM's right of due process; (2) the trial court should have continued the hearing so that CHM's trial attorneys could testify; (3) there is no evidence, or insufficient evidence, to support the amended judgment; and (4) the trial court abused its discretion in awarding the guardian ad litem an additional $25,000 in attorney's fees for this appeal. We affirm as modified.

Maria Palacios sustained permanent brain damage following surgery at Medical Arts Hospital. Her husband, Alfredo Palacios, filed a medical malpractice suit individually, as representative of his wife's estate, and as next friend of his four minor children. Defendants included (1) CHM, (2) the hospital, (3) four physicians, and (4) National Medical Enterprises, Inc., NME Hospitals, Inc., and NME Hospitals, Inc., D/B/A National Medical Hospital Management Company (collectively "NME"). The hospital management company had acquired CHM prior to the injury. Before trial, NME guaranteed the plaintiffs $6 million and payment of medical liens if the plaintiffs failed to recover at least that amount from the other defendants. The plaintiffs agreed that if they recovered more than $6 million, they would share with NME 25% of their recovery above the

guaranteed amount. In addition, the trial court approved a settlement agreement whereby the defendant doctors and hospital paid the plaintiffs $2.6 million.

During trial, three former directors of CHM, its excess liability insurer (Ranger Insurance Company), and Ranger's reinsurer, Employers Reinsurance Company ("ERC") became dissatisfied with actions of CHM's primary insurer, U.S. Fire & Casualty Company ("USF & C"), in defending CHM's interests. Consequently, on the eve of the verdict, CHM's former directors, Ranger, and ERC entered into a "Covenant Not to Execute and Assignment of Claims" with plaintiffs. By terms of this agreement: (1) plaintiffs reserved the right to proceed to judgment against CHM but promised not to execute on any judgment rendered against CHM; (2) ERC agreed to pay plaintiffs the policy limit amount of $20 million; and, (3) the former directors agreed to file "bad faith settlement" claims against USF & C and its trial counsel, with these causes of action to be assigned one-half to plaintiffs and one-half to ERC. After hearing all the testimony, the parties believed the jury was going to return a monstrous verdict against CHM. The trial court approved this agreement.

The case was not withdrawn from the jury because the subsequent bad faith claim hinged on the jury returning a large verdict for plaintiffs and against CHM. The jury made the following findings regarding the percentage of negligence attributable to each defendant:

| | |
|---|---|
| (a) Contemporary Health Management, Inc. | 0% |
| (b) Dr. Stanley Hoover | 15% |
| (c) Dr. Esteban Martinez | 5% |
| (d) Dr. Manuel Ramirez | 5% |
| (e) Medical Arts Hospital | 5% |
| (f) National Medical Enterprises, Inc. | 70% |

The trial court then assessed $385,000 in guardian ad litem fees and allocated liability for these fees among all defendants. On appeal, this Court found the evidence sufficient to support the amount of the trial court's award of guardian ad litem fees, but remanded the case to the trial court due to the court's failure to "state good cause" for taxing 60.3% of these costs against CHM. Because of the zero negligence finding against CHM, it "appeared" that CHM was a successful party and this Court held that it was necessary for the trial court to state good cause on the record for taxing costs against CHM.

On remand, the trial court held a hearing on May 21, 1991 and denied CHM's motion for continuance of the hearing. CHM wanted to call its trial attorneys to testify, however, they were in trial in Dallas. The hearing commenced but was terminated when CHM's cross-examination of the guardian ad litem, regarding the Mary Carter agreement between NME and the plaintiffs, was objected to by the opposing parties. The trial judge concluded the hearing by stating his reasons for taxing costs against CHM, and he included those good cause findings in the Amended Final Judgment and his findings of fact and conclusions of law.

■ In its first two points of error, CHM contends the trial court abused its discretion in denying CHM's motion for continuance of the May 21 hearing, and it violated CHM's right to due process by not allowing it to procure testimony to rebut evidence, if any, of good cause. At submission, counsel for appellant argued that CHM was entitled to a full evidentiary hearing on the issue of good cause. We disagree. The trial court was not required to hold any hearing. As this Court explained in its prior opinion, TEX.R.CIV.P. 173 authorizes a trial court to appoint a guardian ad litem and "allow him a reasonable fee for his services to be taxed as a part of the costs." Rule 131 requires that the successful party to a suit recover such fee from the adverse party, unless the trial court finds good cause to adjudge the costs otherwise and states its reasons on the record, pursuant to Rule 141. *Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex.1985); *State v. B & L Landfill, Inc.*, 758 S.W.2d 297, 300 (Tex.App.—Houston [1st Dist.] 1988, no writ); TEX.R.CIV.P. 131, 141. However, the Texas Rules of Civil Procedure do not require the trial court to conduct an evidentiary hearing prior to stating its good cause

analysis. Moreover, this Court remanded the case for the trial judge to *state* good cause existing for the action he took, not for him to *find* good cause to justify his previous action. Because an evidentiary hearing was not necessary, the trial court did not err in denying the motion for continuance and refusing to hear additional evidence. Therefore, we overrule points of error one and two.

■■■ CHM also contends that there was no evidence, or factually insufficient evidence, to support the trial court's rationale for taxing costs against CHM. The proper standard for reviewing a trial court's good cause finding is to determine whether the trial court clearly abused its discretion. *Rogers*, 686 S.W.2d at 601; *Dover Elevator Co. v. Servellon*, 812 S.W.2d 366, 368 (Tex.App.—Dallas 1991, no writ). In its findings of fact and conclusions of law (incorporated into the amended judgment), the trial court stated, *inter alia*, that:

\* \* \* \* \* \*

3) Good cause is specifically set forth and established in the record of this trial, and this Court hereby finds that good cause exists for the taxing of 60% of the guardian ad litem fees and court costs against Contemporary Health Management, Inc.

4) Good cause exists because Contemporary Health Management, Inc. received a great and valuable benefit from the settlement, release and covenant not to execute in that:
   a. CHM's liability for damages was thereby extinguished; and
   b. CHM was released from all liability.

5) Good cause exists because Contemporary Health Management, Inc.'s former directors, James H. Jones, Stanley M. Craig and Albert G. Dwarshus, Jr., benefitted from the settlement, release and covenant not to execute in that the directors were effectively released from future potential liability and held harmless.

6) Good cause exists because Contemporary Health Management, Inc.'s excess carrier, Ranger Insurance Company, benefitted from the settlement, release and covenant not to execute in that its potential liability was extinguished and it was released from all future liability.

7) Good cause exists because Contemporary Health Management, Inc.'s reinsurance carrier, Employers Reinsurance Company, benefitted from the settlement, release and covenant not to execute in that its potential liability was extinguished and it was released from all future liability.

8) Good cause exists because Contemporary Health Management, Inc. through its various insurance carriers, paid $20 million, or approximately 80% of the total settlement of $22.6 million to achieve the above described benefits to CHM.

At the outset it should be evident, as stated in number eight of the trial court's findings of fact and conclusions of law, that it cannot be a *clear* abuse of discretion to award 60.3% of the guardian ad litem costs against a party that had to pay approximately 80% of the judgment. Although this Court has held that "a successful party under rule 131 is to be based upon success upon the merits, not upon damages,"[1] no matter how this jury answered as to CHM's liability, it could not have altered the amount that CHM would actually have to pay to the plaintiffs. Because of the agreement entered into by the parties, the "merits" of the cause of action were resolved by plaintiffs receiving $20 million from CHM through its carriers. Therefore, the jury answer was moot as to the issues of liability and damages of the parties in this lawsuit. In fact, the only purpose of the jury finding was to provide a basis for a cause of action for bad faith against USF & C.

---

**1.** *Perez v. Baker Packers, A Div. of Baker Int'l Corp.*, 694 S.W.2d 138, 143 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

CHM contends the trial court misinterpreted the "Covenant Not to Execute and Assignment of Claims" as a release of liability, thus erring in its "good cause" findings that the agreement extinguished CHM's liability and released it from liability. In the previous opinion, this Court noted that the agreement expressly provided that it did not constitute an admission of liability on the part of CHM or its former directors. However, the absence of specific language releasing CHM from liability did not prevent CHM from securing the benefit that it desired: the practical effect of the plaintiffs' promise to not execute on any judgment against CHM assured that it would not have to pay any of plaintiffs' damages in the event the jury found it liable for damages in excess of $20 million. CHM actually expressed in the agreement that it anticipated a huge adverse jury judgment. The agreement was merely a vehicle for CHM to acknowledge the "merits" of the lawsuit, pay $20 million, and stop the bleeding. Further, it is clear that CHM did not desire an express release of liability, as it intended to use the expected excess judgment against it as grounds to recover in a lawsuit against USF & C and its attorneys "for the ruinous damages that will be caused by the imposition of an excess judgment." CHM believed that it was going to be exposed to liability in excess of its insurance coverage, therefore it gambled and lost.

We also hold that the trial court was correct in number five of the findings of fact and conclusions of law. The fact that CHM's three former directors benefitted from the agreement in that they were "effectively" released from future potential liability and held harmless is supported by the evidence.

We overrule point of error number three.

■ Finally, CHM complains the trial court abused its discretion in awarding the guardian ad litem $25,000 in fees in addition to the previous award. We agree. The case was remanded solely for the trial court to state good cause for taxing costs against CHM, therefore the trial court was without jurisdiction to make other modifications to the judgment. We sustain CHM's fourth point of error and modify the judgment to exclude the additional fee of $25,000.

The judgment of the trial court is affirmed as modified.

ROBERTSON, Justice, concurring and dissenting.

I concur in the disposition of the appellant's first two points of error and in the last point of error. I dissent to the disposition of the third point.

After CHM was acquired by NME, CHM dissolved its corporate status. During trial, three former directors of CHM, its excess insurance carrier, and the excess carrier's reinsurer became dissatisfied with the action of the primary carrier, U.S. Fire and Casualty Insurance Company and its lawyers in defending CHM's interests. Consequently, CHM's three former directors, Ranger Insurance Company (CHM's excess liability insurer), and Employees Reinsurance Company (Ranger's reinsurer) entered into a "Covenant Not to Execute and Assignment of Claims" with plaintiffs. By the terms of this agreement, plaintiffs reserved the right to proceed to judgment against CHM but promised not to execute on a judgment against CHM, if one were rendered by the trial court. The reinsurer for CHM's excess liability insurance carrier agreed to pay plaintiffs the policy limit amount of $20,000,000. In return, CHM's three former directors agreed to file suit based on "bad faith settlement" claims against USF & C and its trial counsel after entry of judgment against CHM. Additionally, the agreement provided for assignment of fifty percent of these causes of action to plaintiffs and fifty percent to the excess carrier. Counsel for CHM's primary carrier did not participate in the negotiation or approval of this agreement.

The case was submitted to the jury and, as pointed out by the majority opinion, the jury absolved CHM of any negligence and the trial judge found in his judgment that "the verdict was for the Defendant, Contemporary Health Management, Inc." The

trial judge, however, assessed 60.3% of the guardian ad litem's fee against CHM.

On the prior appeal, we held that "[b]ecause CHM was a prevailing party on the merits of the case, the trial court erred in taxing 60% of the costs against CHM without stating good cause on the record." Following remand, the trial court signed an amended judgment and, for good cause, found:

Good cause is specifically set forth and established in the record of this trial, and this Court hereby finds that good cause exists for the taxing of 60% of the guardian ad litem fees and court costs to Contemporary Health Management, Inc., on the following grounds:

1. Good cause exists because Contemporary Health Management, Inc. benefitted from the settlement, release and covenant not to execute in that:

a. CHM's liability for damages was thereby extinguished; and

b. CHM was released from all liability.

2. Good cause exists because Contemporary Health Management, Inc.'s former directors, James H. Jones, Stanley M. Craig and Albert G. Dwarshus, Jr., benefitted from the settlement, release and covenant not to execute in that the directors were effectively released from future potential liability and held harmless.

3. Good cause exists because Contemporary Health Management, Inc.'s excess carrier, Ranger Insurance Company, benefitted from the settlement, release and covenant not to execute in that its potential liability was extinguished and it was released from all future liability.

4. Good cause exists because Contemporary Health Management, Inc.'s reinsurance carrier, Employers Reinsurance Company, benefitted from the settlement, release and covenant not to execute in that its potential liability was extinguished and it was released from all future liability.

5. Good cause exists because Contemporary Health Management, Inc., through its various insurance carriers,

paid $20 million, or approximately 80% of the total settlement of $22.6 million[.]

The reasons given by the trial court for taxing costs against the successful party simply do not state good cause. To begin with, in the first four reasons, the trial court finds good cause because the liability of CHM, its former directors, its excess insurance carrier and its reinsurance carrier was "extinguished" and/or they were "released from future liability" by the "Covenant Not to Execute and Assignment of Claims." However, the liability of CHM and its primary insurer was not "extinguished" and "released" until the jury returned its verdict of no negligence. Although the trial judge's findings repeatedly refer to the covenant as a "release," it was not a release because it did not surrender a cause of action and did not discharge liability. *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 810 (Tex.1980) (Denton, J., concurring) (citations omitted); *Gillette Motor Trans. Co. v. Whitfield*, 186 S.W.2d 90, 93 (Tex.Civ.App.—Fort Worth 1945, writ ref'd w.o.m.); *Robertson v. Trammell*, 98 Tex. 364, 83 S.W. 1098 (1904). To the contrary, the agreement sought to *create* liability: the parties took steps to ensure that the conflict with CHM was not settled in order to spawn new lawsuits against CHM's primary insurer and its trial counsel. Secondly, even if the covenant was a "release," this could not be good cause, or else *any* limitation of liability, *any* compromise or settlement, in *any* case would provide good cause for taxing costs against a successful party. Definitely, the Rules do not intend such a result: when the law favors compromise and settlement, it would be inconsistent to punish a party who prevails on the merits for having attempted to limit its liability.

The fifth reason recited by the court does not state good cause in that it totally disregards the fact that CHM was the successful party. When the plaintiffs submitted the question of liability to the jury, the jury found that CHM was not negligent. The fact that CHM's excess insurer and the excess carrier's reinsurer paid $20

million in the settlement of damages has nothing to do with whether 60.3% of the guardian ad litem's fee should be borne by CHM, who was the successful party, and its primary insurer. Appellant best states it in its brief:

The terms of the "Covenant Not to Execute" blatantly show that Plaintiffs, CHM's excess insurer and the excess carrier's reinsurer were aggressively trying to create liability on the part of CHM's primary carrier, not release liability. *Failing in this endeavor, they now seek to gain costs to be paid by the primary carrier even though they could not succeed in obtaining a verdict to be paid by the primary carrier.* (emphasis supplied).

While I agree "good cause" is an "elusive concept" (*Rogers v. Walmart Stores, Inc.,* 686 S.W.2d 599, 601 (Tex.1985)), it is not so elusive as to defy logic.

The trial court clearly abused its discretion in finding any of these five reasons to be good cause for taxing costs against CHM, the successful party. Because the majority determines otherwise, I dissent.