Affirmed and Opinion filed _____________, 2002









Rehearing En Banc Granted; Opinion of September 19, 2002 Vacated;
Affirmed in Part and Reversed and Remanded in Part; En Banc Plurality and
Dissenting Opinions on Rehearing filed July 10, 2003.                                                            

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00453-CV  

____________

 

LAWRENCE MADEKSHO,
ROY AND MARY MALONE, THOMAS GILLESPIE, AND PATRICIA GAREFALOS, Appellants

 

V.

 

ABRAHAM, WATKINS,
NICHOLS & FRIEND, ROBERT BALLARD AND THE LAW OFFICE OF ROBERT E. BALLARD,
P.C., Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 239th District Court

                                                         Brazoria
County, Texas                     

Trial Court Cause
No. 88G0614-2 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



E
N   B A N C   P L U R A L I T Y   O P I N I O N   O N  
R E H E A R I N G

 

          This case is part of the debris from a falling­-out between
attorneys who worked together on asbestos cases for almost twenty years.  Generally, attorney Lawrence Madeksho signed up the clients and did the pretrial work,
while Robert Ballard and the law firm of Abraham, Watkins, Nichols & Friend
(“the law firm”) did most of the trial work. 
They orally agreed to split any contingency fees earned. 

            Four
of their clients (Roy Malone, Mary Malone, Thomas Gillespie, and Patricia Garefalos) sued Owens-Corning Fiberglas Corporation in
1988.  The clients signed a contract with
Madeksho providing for a 40% contingency fee, increasing to 45% if an appeal
was filed.  The clients won a $4.5
million verdict at trial, which grew to more than $10 million by the time the
judgment became final.  The First Court
of Appeals affirmed.[1]


            While
the case was pending in the Texas Supreme Court, a separate dispute arose
between Madeksho and the law firm. 
When the law firm decided to withdraw from future asbestos litigation, Madeksho stopped payment on the firm’s share of fees from
past litigation, including a $1 million fee from a settlement with Fibreboard
Corporation.  At the end of that
dispute, we affirmed summary judgment against Madeksho
enforcing the law firm’s oral fee-splitting agreement.[2]  

            After
these developments, the clients wrote a letter with Madeksho’s
assistance (the law firm claims it was at his instigation) asserting a conflict
of interest, firing the law firm in the Owens-Corning appeal, and instructing
the firm not to contact them.

            The
Supreme Court affirmed the clients’ judgment against Owens-Corning on June 5,
1998.[3]  Within a week, counsel for the law firm wrote
Owens-Corning claiming a portion of the judgment, and requesting that any
payment include the firm’s name, or be made by interpleader in the trial court.  Soon thereafter, Madeksho notified
Owens-Corning the entire judgment should be paid to the clients, and nothing
should be paid to the law firm.  

            Having
received these conflicting claims, Owens-Corning filed an interpleader in the
underlying case in the trial court three days after the Supreme Court’s mandate
issued.  At a hearing seventeen days
after the mandate issued, all parties agreed the clients were entitled to 55%
of the final judgment, which was paid directly to them.  The trial court ordered the remainder paid
into the court’s registry pending resolution of the fee dispute.  Everyone signed releases in favor of
Owens-Corning, which was dismissed with prejudice.  A month later, an agreed order authorized
payment from the registry of about $1 million to the appellate attorneys who
handled the successful appeals.  

            The
law firm filed a cross-claim against Madeksho for breach of contract and
quantum meruit, seeking 50% of the amount remaining
in the registry plus consequent attorney’s fees and costs.  Madeksho filed a plea to the jurisdiction
challenging the trial court’s power to decide the matter, and cross-claimed
against the law firm asserting breach of contract, breach of fiduciary duty,
and fee forfeiture.  The clients filed a
response to the interpleader, a motion to dismiss, and a motion to enforce the
mandate requesting that all funds be paid to them.

            On
its own motion, the trial court severed all claims filed after the original
interpleader, and set a trial for January 30, 2001, on the sole issue of
allocating the funds in the registry between the attorneys.  The day before trial, Madeksho
sought a writ of prohibition and an emergency stay from the Texas Supreme
Court, both of which were denied the day they were filed.  When called to trial, both parties waived a
jury, and the trial court awarded each party half the funds remaining in the
registry (by now almost $4 million).  

            Madeksho and the clients appealed, but did not supersede
the judgment; on May 24, 2001, the funds were disbursed.  A panel of this Court held the trial
court had no subject-matter jurisdiction to conduct the post-judgment
proceedings.  The panel pointed to Harris
County Children’s Protective Services v. Olvera,[4]
in which this Court said trial courts have no jurisdiction to do
anything except what is stated in an appellate mandate.  Here, the Supreme Court mandate stated: 

Roy
Malone, et al. shall recover from Owens-Corning Fiberglas Corporation and
surety Aetna Casualty & Surety Company, who shall pay the costs in this
Court and in the court of appeals.

 

The panel held this mandate meant the trial court
could do nothing but order Owens-Corning to pay the clients.[5]  The panel also relied on Wong v.
Smith,[6]
in which we prohibited post-judgment interpleaders
of any kind as untimely.

            No
one was happy with the panel opinion—all parties filed motions for rehearing en
banc.  The law firm argued the panel had
gone too far, interpreting the Supreme Court mandate too strictly.  The clients and Madeksho
argued the panel had not gone far enough, refusing to order the law firm to
return any money to them (a result of their “no jurisdiction” argument they
perhaps had not anticipated).  

            This
is not the first time we have been asked to review post-mandate claims to a
judgment.  On at least four occasions, we
have reviewed post-judgment claims to all or part of a judgment by attorneys or
other creditors, without once indicating any jurisdictional concerns.[7]  Numerous other courts have as well.[8]  

            Our
dissenting colleagues find the conflict between these cases and the panel
opinion “illusory” because (1) the conflict is not explicit and (2) our earlier
cases merely concerned creditors’ post-judgment attempts to attach
property.  But jurisdiction is an issue
in all cases whether explicitly mentioned or not; we cannot distinguish our
other cases on the presumption that jurisdiction was waived or that we failed
to think about it.[9]  And if the law firm’s claim here is a
collateral attack on a judgment, so were all our earlier post-judgment cases;
in each case, creditors were asking that a judgment mandating payment to one
party should instead be paid to them. 
All of us agree a trial court judgment is property that creditors may
seize; our dissenting colleagues would hold an appellate judgment is something
more.

            Because
we have sometimes allowed trial courts to adjudicate post-mandate claims to a
judgment, but the panel opinion did not, we granted rehearing en banc to settle
the conflict.[10]

Jurisdiction and Olvera

            In Olvera,
we reached the unimpeachable conclusion that a final mandate assessing
appellate costs does not authorize the trial court to enter a new judgment
adding attorney’s fees to the old one.[11]  The opinion is somewhat ambiguous on whether
this was a question of jurisdiction or a question of simple error.  Although we stated the trial court had “no
jurisdiction” to do anything beyond the appellate mandate, we also found the
trial court “abused its discretion” in entering the new awards.[12]  Jurisdictional matters are reviewed de novo,
not for abuse of discretion;[13]
if the trial court had no jurisdiction, it had no discretion in the case to
abuse.  Further, the proper disposition
in jurisdictional cases is to set aside the trial court’s judgment and dismiss
the appeal;[14] in Olvera, we
reversed and rendered judgment.[15]  

            The
Olvera
court quoted our older sister’s opinion in Myers v. Myers[16] for the proposition that trial courts on remand
have “no jurisdiction to review, interpret or enforce” an appellate mandate.[17]  This language—often quoted by intermediate
appellate courts[18]—comes
from Conley v. Anderson,[19] a
1913 opinion in which the Supreme Court stated “no district court ha[s]
jurisdiction to review [our] judgment, nor to interpret and enforce it, but
must observe it as it was framed by this court.”  

            Perhaps
that statement was true in 1913, but it cannot possibly be true today.  If trial courts cannot “enforce” appellate
judgments, why has the Supreme Court said they must?[20]  If lower courts cannot “interpret” appellate
mandates, why has the Court authorized us to use its related opinion to do just
that?[21]  

            Myers itself shows this language has
never been applied literally.  There, the
First Court of Appeals affirmed a judgment awarding Mrs. Myers $20,000 in
attorneys’ fees.[22]  The trial court ordered this sum (held in the
registry of the court) to be paid to her attorneys, not Mrs. Myers.  The First
Court refused to exercise jurisdiction in the matter, finding this order
ancillary to the merits, and not an interference with its jurisdiction.[23]  If anything, the case stands for the
proposition that a judgment ordering “payment to Mrs. Myers” can be satisfied
by paying her attorneys. 

            In
this case, the Supreme Court’s mandate required Owens-Corning to pay “Roy
Malone, et al.” (emphasis
added).  Interpreting “et al.” to mean
his three co-plaintiffs may be easy, but it is an interpretation
nonetheless.  If no one can interpret
Supreme Court mandates, then the panel opinion violated its own rule.  

            Moreover,
if defendants must pay the person named in the mandate—and no one else—they
will sometimes have to pay the dead.[24]  If the judgment has been assigned to someone
else, they will have to pay twice.[25]  In the past, we have not construed mandates
so strictly.[26]         

            Clearly,
trial courts must obey appellate mandates, and they abuse their discretion if
they do not.  But it is not a matter of
jurisdiction—they do not suddenly step out into thin air.  Trial courts retain their constitutional
jurisdiction to perform duties collateral to and consistent with those
mandates.[27]  For example, they may

·         
Adjudicate turnover disputes;[28]

·         
Issue writs of execution, and adjudicate
disputes related thereto;[29]

·         
Create, modify, or terminate trusts set up for
minors or the incapacitated;[30]

·         
Consider motions for contempt and to enforce;[31]


·         
Recalculate prejudgment interest;[32]
and

·         
Discharge a judgment lien after bankruptcy.[33]

None of these duties are
mentioned in most appellate mandates, yet trial courts undoubtedly have
jurisdiction to perform them long after a mandate has issued.  And it is hard to see why these activities
constitute “enforcing” the judgment (as our dissenting colleagues argue), but
deciding who should get the proceeds (as in this case) does not.  

            There
is a great difference between a court’s power to act and whether its act
was proper.[34]  In Dubai
Petroleum Co. v. Kazi,[35]
the Supreme Court reversed a long line of cases holding statutory prerequisites
“jurisdictional,” noting the serious and long-lasting consequences of such a
categorization: 

[A] judgment will never be considered final if the court lacked
subject-matter jurisdiction.  ‘The
classification of a matter as one of [subject-matter] jurisdiction . . . opens
the way to making judgments vulnerable to delayed attack for a variety of
irregularities that perhaps better ought to be sealed in a judgment.’ (citation
omitted) . . . [I]t seems perverse to treat a judgment as perpetually void
merely because the court or the parties made a good-faith mistake in
interpreting the law.[36]

 

Because a void order is a nullity,[37]
it may be collaterally attacked years later. 
Or it may be simply ignored.  This
is a recipe for disorder.            

            Of
course, Kazi
was not a mandate-compliance case, and no court appears to have considered it
in that context in the three years since. 
But several recent Supreme Court cases hold a trial court “errs” if it
strays from a mandate, not that it has “no jurisdiction.”[38]  And the principles stated in Kazi support this
approach.  “[T]he modern direction of
policy is to reduce the vulnerability of final judgments to attack on the
ground that the tribunal lacked subject-matter jurisdiction.”[39]
Thus, as in Kazi,
we believe the trial court’s jurisdiction depends on the nature of the
underlying claim, not whether it properly follows the appellate mandate.[40]

            Here, the trial court
clearly had jurisdiction of the underlying claim.  We need not address cases in which plenary
jurisdiction expired or specific issues were remanded (relied on by our
dissenting colleagues) because in this case there was a new filing—a
post-judgment interpleader.  Trial courts
unquestionably have quasi in rem jurisdiction to determine who owns funds tendered
into the registry.[41]  Indeed, they must have such jurisdiction;
they cannot simply toss the money back out the clerk’s window.  As this Court has stated, “[f]unds on deposit in the registry of a trial court are always subject to the control and order
of the trial court, and the court enjoys great latitude in dealing with them.”[42]  Here, Owens-Corning interpleaded the judgment
amount into the court registry; that was jurisdiction enough.

            The Kazi
Court branded as “perverse” the consequences of treating judicial errors as
jurisdictional, and thus perpetually void.[43]  As noted at the outset, this Court and others
have decided many post-judgment interpleaders over
the years; if we had no jurisdiction, they are all subject to collateral
attack.  The trial court’s order in this
case included not only whom Owens-Corning should pay, but the releases it
should receive in return; if the order is void, are the releases as well?  And the successful appellate lawyers would no
doubt be surprised to learn the $1 million fee they received is void—even
though everyone agreed to it—as parties cannot bestow subject-matter jurisdiction
by consent.[44]  

            This
fee dispute arose after and was collateral to the underlying asbestos case, and
could in no way affect that judgment. 
Our dissenting colleagues concede that a trial court may adjudicate
post-judgment claims that do not conflict with the judgment.  Here, nothing the trial court did was
inconsistent with the Supreme Court’s mandate: Owens-Corning paid $10 million,
and the clients or their assignees (the trial attorneys) got it all.  So when a dispute arose post-judgment about
who the proper trial attorney was, the trial court had jurisdiction to decide.

Timely Interpleader
and Wong

            The panel also held that Owens-Corning’s
interpleader was improper because it was filed after the Texas Supreme Court
issued its opinion.  In Wong v.
Smith, we held that no
interpleader could be filed post-judgment.[45]
But a closer look at the cases we relied on in Wong indicates our absolute prohibition went too far.

            In Wong, the successful plaintiffs had gone through four attorneys
(two were fired, one died).  The fired
attorneys intervened before judgment and agreed to severance of their fee claim
pending resolution of the underlying suit. 
When a final mandate issued affirming the plaintiffs’ award, the
defendant interpleaded the full judgment, and the fee dispute began.  But nothing
was distributed to the plaintiffs in the interim.  This Court correctly held that equity could
not be used to delay their recovery any longer.[46]

            Nevertheless, we erred
in quoting cases from the early 1900s for the proposition that post-judgment
interpleader is never proper.  Certainly, if a party holding property knows
of three claimants, it cannot file suit against one, then lose, and then delay
payment by interpleading the other two. 
That is what happened in each of the early cases cited by Wong,[47]
and in each of the out-of-state cases catalogued by our dissenting
colleagues.  But that is not what happened here—neither Owens-Corning nor the law firm
could have known about the fee dispute pre-judgment, as it arose four years
later.  In this situation, we believe the
equitable remedy of interpleader should be available, for several reasons.[48]  

            First,
interpleader is an equitable remedy intended to fill the gaps when legal
remedies are inadequate.  Judgment
debtors may receive just as many claims after a mandate as they receive before
it.  As the split opinions in this appeal
show, reasonable minds can disagree about the jurisdiction and interpretation
of an appellate mandate.  When judgment
debtors must decide among conflicting claims at their peril, that peril is no
less simply because it arises after judgment.

 

Second, in this case, Owens-Corning could not have filed earlier.  Interpleader
requires an unconditional
tender,[49]
a condition entirely inconsistent with prosecuting a $10 million appeal.  Owens-Corning filed a supersedeas
bond; requiring an unconditional tender of the entire judgment would have
required it to supersede twice.  

            Third,
funds in the registry of the court are held in custodia
legis, and thus exempt from claims by third
parties.[50]  There is no point in requiring an
earlier interpleader if no one can file claims to the funds until after the
mandate issues and the funds are released.[51]

            Fourth,
if Owens-Corning had not interpleaded the funds, the law firm might have
protected itself by filing a garnishment against Owens-Corning,[52]
or perhaps intervening in the post-judgment proceedings below.[53]  If those proceedings would have been timely, it is hard to
see why interpleader was not.  The result
should not be different because of the form of action employed. 

          The clients and Madeksho
argue the law firm could have pursued its claims by filing a separate
case.  But Wong forecloses that option. 
There, the defendant filed its interpleader as a separate action and
paid every dime of the judgment into the registry.[54]  Nonetheless, we ordered the trial court to
allow the plaintiff to extract the judgment a second time by issuing execution
in the first suit on the defendant’s real property.[55]  Appellate judgments should certainly be
enforced, but not twice.

            It
is also unclear that a separate case—perhaps in a separate court—is an adequate
legal remedy.  Most post-judgment disputes must be raised in the
trial court that rendered the judgment, as it is usually familiar with the case
and can settle disputes more quickly.[56]  Moreover, a judgment in a separate
suit for fees will come too late if the clients have already taken the funds
and invested them in exempt assets, or spent them on unrestrained living.  The clients in this case offer us no
guarantee that if they receive the interpleaded funds, they will ever be seen
again.  

            But
a separate action is not an adequate remedy for an even more basic reason: it
would deprive the law firm of a property right. 
After judgment, attorneys who earn a contingency fee are equitable
owners (not mere claimants) of their portion of the judgment.[57]  Due to this property interest, a defendant
who pays a judgment in full to the opposing party without accounting for the
contingency-fee claim will have to pay the fee portion twice.[58]  If we ignore the law firm’s equitable
interest and order the entire judgment paid to the clients, the law firm will
be deprived of property with no assurance it will be returned.  Property rights cannot be treated so
indifferently.

            We disagree with our
dissenting colleagues that Owens-Corning had no exposure to multiple liability
because it was paying a judgment rather than a settlement; it is hard to see
why paying a settlement twice is a peril but paying a judgment twice is
not.  And while the judgment
Owens-Corning had to pay did not mention attorneys’ fees, the law firm claimed
a substantial portion of that judgment had been assigned as fees to Madeksho, and by him to the law firm.  This was not a facially invalid claim, as our
enforcement of the Fibreboard fee shows.[59]

            But more important, such
distinctions miss the point of interpleader. 
The question is not whether the conflicting claims are easy for us, but
for the party facing conflicting claims. 
Appellate judges make decisions after discovery has been completed, the
case has been tried, and all the appellate briefs are in.  We see the world through the glasses of
hindsight, and risk nothing if we are wrong. 
But debtors rarely have these advantages.  Who could fail to see the peril in a demand
letter asserting an interest in several million dollars about to be paid to
someone else?

            Our
dissenting colleagues would have us stick to Wong on the principle of certainty in the law.  We agree this is an important principle, but
we disagree that we violate it, as (1) no court has ever cited Wong until
the panel here did 26 years later, (2) no other case in 60 years has held
post-judgment interpleaders untimely, and (3) this Court
and many others have routinely entertained them.  Wong
stands alone as an exception, not the rule; accordingly, we disapprove of its holding that post-judgment interpleaders are never proper.  

            Because of the uncertainties and liabilities facing judgment debtors who
receive conflicting claims—claims often based on disputes in which they had no
part—the law requires us to resolve every reasonable doubt in favor of a stakeholder’s right to interplead, and affirm a trial
court’s interpleader order absent an abuse of discretion.[60]  Applying that standard, we find the trial
court did not err in exercising jurisdiction of this post-mandate dispute.  

 

 

Severance

            In a second point, Madeksho and the clients argue the trial court erred by
severing all their defensive issues to the law firm’s fee claim.  On this point, we agree.  

            Texas law discourages multiplicity
of suits, preferring that all disputes between the parties over the same
subject matter be settled in one suit.[61]  A trial court has discretion to sever claims
when: (1) the controversy involves more than one cause of action; (2) the
severed claim could be asserted independently in a separate lawsuit; and (3)
the severed actions are not so interwoven with the other claims that they
involve the same facts and issues.[62]  

            Here, the fee forfeiture and breach
claims could have been brought in separate suits.[63]  And a claim for attorney’s fees may be
severed from the underlying claims.[64]  But once the law firm and Madeksho
filed cross-claims against each other in the interpleader, any claims arising
from the same transaction or occurrence had to be filed in the same suit.[65]  

            In this case, the law firm’s claim
was based on an oral understanding with Madeksho.  Madeksho and the clients
alleged the agreement was unenforceable, and had been forfeited by the law
firm’s post-trial actions.  On appeal,
the law firm argues these defenses have been rejected by the First Court of
Appeals,[66] but
that was not the basis for the trial court’s severance, and there is no summary
judgment motion asserting this ground. 
We cannot take judicial notice that claims are collaterally estopped.[67]  

            Whether the law firm was entitled to
a fee, and if so how much, is a single dispute that could not be severed into
separate parts.  We sustain the second
point.

 

Conclusion 

            In a perfect world,
appellate mandates would settle all questions and end all disputes.  But sometimes they do not.  And when they do not, trial judges must do
the best they can to interpret what we have said and follow it.  By attempting to settle the claims to
attorneys’ fees here, the trial judge did nothing more than that.

            Until the Supreme Court
addresses a post-judgment interpleader after a final appellate mandate, we have
only general principles in the current law of jurisdiction and interpleader to
guide us.  Until then, those principles
must come from cases that are distinguishable on the facts, as our dissenting
colleagues ably show.  But our duty, as
intermediate appellate court, is to apply these principles to new factual
situations the higher court has yet to address.   

            Because the trial court
had jurisdiction to adjudicate the interpleader filed by Owens-Corning, we
grant the law firm’s request for reconsideration en banc, affirm the trial
court’s refusal to dismiss the interpleader, and vacate the panel’s judgment to
the contrary.  But because the trial
court abused its discretion in severing the defensive issues related to the law
firm’s fee claim, we reverse the trial court’s judgment and order of severance,
and remand to that court for further proceedings consistent with this opinion.[68]

                                                                                                                        

                                                                                                            

                                                                                    /s/        Scott Brister

                                                                                                Chief
Justice

 

Rehearing En
Banc Granted and Opinion of September 19, 2002, Vacated; Judgment rendered and
En Banc Plurality and Dissenting Opinions on Rehearing filed July 10,
2003.  (Chief Justice Brister
is joined by Justices Fowler, Seymore and Guzman in
the Plurality.  Justice Edelman concurs
in result only.  Justice Hudson filed a
Dissenting opinion and is joined by Justices Yates, Anderson, and Frost).











[1] See Owens-Corning Fiberglas Corp. v. Malone,
916 S.W.2d 551 (Tex. App.—Houston [1st Dist.] 1996), aff’d, 972 S.W.2d 35 (Tex. 1998).





[2] See Madeksho v.
Abraham, Watkins, Nichols & Friend, 57 S.W.3d 448, 449 (Tex.
App.—Houston [14th Dist.] 2001, pet. denied). 





[3] See Owens-Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35 (Tex. 1998).





[4] 971
S.W.2d 172, 175–76 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).





[5] Madeksho v. Abraham, Watkins, Nichols &
Friend, No. 14-01-00453-CV, 2002 WL 31554533 (Tex. App.—Houston [14th
Dist.] Sept. 19, 2002, no pet. h.). 





[6] 537 S.W.2d 468 (Tex. Civ.
App.—Houston [14th Dist.] 1976, orig. proceeding).





[7] See Burns
v. Bishop, 48 S.W.3d 459, 467 (Tex. App.—Houston [14th Dist.] 2001,
no pet.) (adjudicating post-mandate intervention, garnishment, and turnover
claims to funds placed in court’s registry); Northshore Bank v. Commercial Credit Corp., 668 S.W.2d 787, 789 (Tex.
App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.) (adjudicating post-mandate interpleader); Velasquez
v. Lunsford, No. 14-95-00172-CV, 1996 WL 544429, *2 (Tex. App.—Houston
[14th Dist.] Sept. 26, 1996, no writ) (not designated for publication)
(adjudicating post-judgment claims to fee portion of settlement deposited in
court’s registry); First Bank of LaMarque v.
Alexander, No. 14-89-00837-CV, 1990 WL 68486 (Tex. App.—Houston [14th
Dist.] May 24, 1990, no writ) (not designated for publication) (adjudicating
post-judgment intervention by attorney claiming assignment of fee portion of
judgment).





[8] See, e.g., Palandjoglou
v.United Nat’l Ins. Co., 821 F. Supp. 1179, 1181
(S.D. Tex. 1993); Stuart v. Bayless, 945 S.W.2d 131, 135 (Tex. App.—Houston [1st
Dist.] 1996), aff’d in part, rev’d in
part, 964 S.W.2d 920 (Tex. 1998); Onwuteaka v. Gill,
908 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1995, no writ); Coit v. Dallas County Flood Control Dist. No. 1,
900 S.W.2d 907, 908 (Tex. App.—Eastland 1995, no writ); Enochs v. Brown, 872 S.W.2d 312, 316 (Tex. App.—Austin 1994, no writ); Commercial Credit Corp. v. U. S. Fire Ins.
Co., 630 S.W.2d 651, 652 (Tex. Civ. App.—Houston
[1st Dist.] 1981, writ ref’d n.r.e.).





[9] See Texas
Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 443-44 (Tex. 1993) (stating subject-matter jurisdiction is never presumed
and cannot be waived).





[10] See Tex.
R. App. P. 41.2(c).





[11] 971
S.W.2d at 175–76. 





[12] See id. at 175–78.





[13] See Texas Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).





[14] See Estate of C.M. v. S.G., 937 S.W.2d
8, 11 (Tex. App.—Houston [14th Dist.] 1996, no writ).





[15]
971 S.W.2d at 178.  Our dissenting
colleagues incorrectly say we rely on Olvera’s reversal and remand of one issue (appellate fees
for the second appeal); in fact, we rely on the reversal and rendition (not
dismissal) of a separate issue that went beyond the first mandate (appellate
fees for the first appeal). 





[16] 515
S.W.2d 334, 335 (Tex. App.—Houston [1st Dist.] 1974, writ dism’d).





[17] Olvera, 971
S.W.2d at 176; Myers, 515 S.W.2d at
335.





[18] See, e.g., Dallas County v. Sweitzer, 971 S.W.2d
629, 631 (Tex. App.—Dallas 1998, no pet.); Contemporary Health Mgmt., Inc.
v. Palacios, 832 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 1992, no
writ); Martin v. Credit Prot. Ass’n, 824
S.W.2d 254, 255 (Tex. App.—Dallas 1992, writ dism’d w.o.j.); Schliemann
v. Garcia, 685 S.W.2d 690, 692 (Tex. App.—San Antonio 1984, no writ); Bilbo Freight Lines, Inc. v. State, 645
S.W.2d 925, 927 (Tex. App.—Austin 1983, writ ref’d n.r.e.); Los Campeones, Inc. v. Valley Int’l Prop., Inc., 591 S.W.2d
312, 315 (Tex. Civ. App.—Corpus Christi 1979, no
writ).





[19] 164
S.W. 985, 986 (Tex. 1913).





[20] See Tex.
R. App. P. 51.1(b); Edgewood Indep. Sch. Dist. v. Kirby, 804 S.W.2d 491, 494 (Tex. 1991)
(requiring trial court to “observe and enforce” Supreme Court’s judgment).





[21] See
Hudson v. Wakefield, 711 S.W.2d 628,
630 (Tex. 1986) (holding lower courts should look to both mandate and appellate
opinion to interpret mandate). 





[22] Myers, 515 S.W.2d at 335.





[23] Id. at 335–36.





[24] See
Tex. R. App. P. 7.1 (providing
appeal may be adjudicated as if party who dies after judgment is still alive).





[25] See
Tex. Prop. Code § 12.014; Honeycutt v. Billingsley, 992 S.W.2d
570, 584 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (affirming
attorney’s right to bring action against defendant who, with notice of his fee
claim, paid full judgment to plaintiff).





[26] See,
e.g., Ohio Med. Prods., Inc. v. Suber, 758 S.W.2d
870, 873 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (suggesting
judgment “for plaintiff” may provide for hospital as well).





[27] See In re Bennett, 960 S.W.2d 35, 39–40
(Tex. 1997) (holding trial court had ministerial duty to dismiss after non-suit
and take no action after removal to federal court, but still had jurisdiction
to sanction counsel, as collateral matter not inconsistent with merits or
either ministerial duty); see also Bayoud v. Bayoud, 797 S.W.2d 304, 310 (Tex. App.—Dallas 1990,
writ denied) (holding mandate ordering trial court to take no further action
regarding receivership did not bar it from issuing orders to dispose of
receivership property in registry).





[28] See Tex.
Civ. Prac. & Rem. Code § 31.002; Lozano
v. Lozano, 975 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied).





[29] See Tex.
Civ. Prac. & Rem. Code §§ 34.001–.067.





[30] See Tex.
Prop. Code §§ 142.001–.007; see,
e.g., Texas State Bank v. Amaro, 87 S.W.3d
538, 542 (Tex. 2002).





[31] See, e.g., Cook v. Cameron, 733
S.W.2d 137, 139 (Tex. 1987).





[32] See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 999 S.W.2d 887, 894 (Tex. App.—Waco
1999, pet. denied).





[33] See Tex.
Prop. Code § 52.022(a); Laswell v. Houston
Citizens Bank & Trust Co., 640 S.W.2d 701, 702 (Tex. App.—Houston [14th
Dist.] 1982, no writ).       





[34] Lehmann v. Har-Con Corp.,
39 S.W.3d 191, 207 (Tex. 2001).





[35] 12
S.W.3d 71 (Tex. 2000).





[36] Id.
at 76 (quoting Restatement (Second) of
Judgments § 12 cmt. b, at 118 (1982)).





[37] See
State ex rel. Latty v.
Owens, 907 S.W.2d 484, 486 (Tex. 1995).





[38] See,
e.g., Texas Workers’ Comp. Ins. Fund
v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000)
(holding court of appeals did not have discretion to assess costs contrary to
Supreme Court’s earlier mandate); Cook,
733 S.W.2d at 139 (holding “trial court erred in not enforcing [our] judgment
as rendered”).





[39] Kazi, 12
S.W.3d at 76 (citations omitted).





[40] Id. (holding trial court’s jurisdiction
grew out of wrongful death claim, not whether claimants had complied with
statutory prerequisites applicable to foreign plaintiffs).               





[41] See Bryant v. United Shortline
Inc. Assur. Servs., 972
S.W.2d 26, 29 (Tex. 1998) (stating interpleaded funds “gave the trial court
jurisdiction over the funds to disburse them upon determining ownership”).





[42] Burns
v. Bishop, 48 S.W.3d 459, 467 (Tex. App.—Houston [14th Dist.] 2001, no
pet.) (emphasis added).





[43] Kazi, 12
S.W.3d at 76.





[44] Id.





[45] 537 S.W.2d 468 (Tex. Civ.
App.—Houston [14th Dist.] 1976, orig. proceeding).





[46] Id. at 470; see
also Olmos v. Pecan Grove Mun.
Util. Dist., 857 S.W.2d 734, 741 (Tex. App.—Houston [14th Dist.] 1993, no
writ) (stating interpleader unavailable in cases of unreasonable delay).





[47] See Farmers
State Bank of Meridian v. Nat’l Fire Ins. Co., 169 S.W.2d 545, 549 (Tex. Civ. App.—Waco 1943, no writ); Nash v. McCallum, 74 S.W.2d 1046, 1047 (Tex. Civ.
App.—El Paso 1934, no writ); United
Producers’ Pipe Line Co. v. Britton, 264 S.W. 576, 578 (Tex. Civ. App.—El Paso 1924, writ ref’d).





[48] See
Van Slyck v.
Dallas Bank & Trust Co., 45 S.W.2d 641, 643 (Tex. Civ.
App.—Dallas 1931, no writ) (holding post-judgment interpleader in separate
action was proper to protect judgment debtor from having to pay twice).





[49] See Tri-State Pipe & Equip.,
Inc. v. S. County Mut. Ins. Co., 8 S.W.3d 394, 403 (Tex. App.—Texarkana
1999, no pet.).





[50] See
First S. Props., Inc. v. Vallone, 533 S.W.2d 339,
343 (Tex. 1976) (exempt from execution); Daniels
v. Pecan Valley Ranch, 831 S.W.2d 372, ­­­382 (Tex. App.—San Antonio 1992,
writ denied) (exempt from garnishment); Crouch
v. Shields, 385 S.W.2d 580, 584 (Tex. Civ.
App.—Dallas 1964, writ ref’d n.r.e.)
(exempt from sequestration).





[51] See
Burns v. Bishop, 48 S.W.3d 459, 466–67 (Tex. App.—Houston [14th Dist.]
2001, no pet.); Hardy v. Constr. Sys., Inc., 556 S.W.2d 843, 844 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref’d n.r.e.); Houston
Drywall, Inc. v. Constr. Sys., Inc., 541 S.W.2d
220, 221 (Tex. Civ. App.—Houston [1st Dist.] 1976, no
writ). 





[52] See Northshore
Bank v. Commercial Credit Corp., 668 S.W.2d 787, 789 (Tex. App.—Houston
[14th Dist.] 1984, writ ref’d n.r.e.).





[53] See Breazeale v.
Casteel, 4 S.W.3d 434, 436 (Tex. App.—Austin 1999,
pet denied) (allowing post-judgment intervention by party claiming interest in
property that became subject of turnover proceeding). 





[54] Wong, 537 S.W.2d at 469.





[55] Id. at 470.





[56] See, e.g.,
Tex. Civ. Prac. & Rem.
Code §§ 15.012–.013, 65.023(b) (requiring actions
to stay court proceedings or halt execution to be brought in court that
rendered judgment); In re Nat’l Unity
Ins. Co., 963 SW2d 876, 878 (Tex. App.—San Antonio 1998, no pet.) (requiring
bill of review to be brought in court that rendered judgment).  We have suggested that the post-judgment
dispute should receive a new cause number, though failure to do so is an
administrative error that does not affect the merits.  See Burns, 48 S.W.3d at
461 n.1. 





[57] See Mo. Pac. R.R. v. Austin,
292 F.2d 415, 419 (5th Cir. 1961); Velasquez v. Lunsford, No.
14-95-00172-CV, 1996 WL 544429, at *6 (Tex. App.—Houston [14th Dist.] Sept. 26,
1996, no writ) (not designated for publication).





[58] Honeycutt v. Billingsley, 992 S.W.2d
570, 584 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).





[59] See Madeksho v.
Abraham, Watkins, Nichols & Friend, 57 S.W.3d 448 (Tex. App.—Houston
[14th Dist.] 2001, pet. denied) (affirming judgment for law firm against Madeksho for one-half of contingency fees received).





[60] See Bryant
v. United Shortline Inc. Assur.
Servs., 972 S.W.2d 26, 31 (Tex. 1998).





[61] See Barrientos v.
Nava, 94 S.W.3d 270, 277 (Tex. App.—Houston [14th Dist.] 2002, no pet.).





[62] See Liberty Nat’l Fire Ins. Co. v. Akin,
927 S.W.2d 627, 629 (Tex. 1996).





[63] See, e.g., Burrow v. Arce,
997 S.W.2d 229, 232 (Tex. 1999) (addressing fee forfeiture claim brought in
separate suit).





[64] See McAllister v. Samuels, 857 S.W.2d
768, 779 (Tex. App.—Houston [14th Dist.] 1993, no writ).





[65] See State & County Mut.
Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001) (holding co-parties
must assert all their claims if they file cross-claims against each other).





[66] See Malone v. Abraham, Watkins, Nichols
& Friend, No. 01-99-01192-CV, 2002 WL 1722337, *1 (Tex. App.—Houston
[1st Dist.] July 24, 2002, no pet. h.).





[67] See Bhalli v.
Methodist Hosp., 896 S.W.2d 207, 210 (Tex. App.—Houston [1st Dist.] 1995,
writ denied).





[68] We
do not reach the remaining points asserted by Madeksho
and the clients (arguing the law firm is not entitled to any fee as a matter of
law) as these issues were severed before trial and are not before us.